Ethel McKOSKY, Appellee,

v.

The TOWN OF TALIHINA, a Municipal Corporation, Appellant.

No. 49145.

Court of Appeals of Oklahoma,
Division No. 2.

June 21, 1977.

George W. Oliphant, Holdenville, and Sullivan & Sanders, Poteau, for appellee.

Larry B. Lucas, Poteau, for appellant.

T. N. Pool and Robert C. Thompson, Sherman, Pool, Coldiron & Thompson, Del City, amicus curiae brief of Oklahoma Municipal League.

BACON, Judge.

This appeal is taken by the town of Talihina, Oklahoma, from a judgment award-ing appellee property owner $6,170.33 in personal and property damages resulting from the town's faulty sewer system.

The record reflects that appellee is a property owner in the town of Talihina. In 1969, her home operated with the use of a septic tank as a sewer system. In that same year, appellee granted easements to the town of Talihina in furtherance of an overall municipal sewer system construction project.

The system as constructed resulted in one manhole cleanout located on appellee's property and another manhole cleanout po-sitioned close to her property. Appellee was taken off her septic tank in 1970 and was hooked up to the new sewer system. In 1971 the manholes began overflowing and "shot water up about four feet high . . . every time it rained." Along with the water came raw sewage, toilet paper, and miscellaneous filth. On those occasions, appellee's yard would be inundat-ed with sewage. The sewage also backed up in appellee's bathtub, sinks, and com-mode, and spilled out onto the floor of her home. There were numerous times when she was forced to wear rubber boots and to evacuate her home. The foundation of ap-pellee's home settled and the doors and windows would not readily close as a result. On these occasions appellee would become ill, vomit, have headaches, and suffer from foot and lip infections.

The record further shows appellee re-peatedly called the town council but re-ceived little relief. The town employees spread disinfectant around appellee's prop-erty, and once appellee was taken off the sewer system for the purpose of repairs, but the sewer continued to back up. This con-dition was still continuing at time of trial.

Appellee filed her lawsuit on September 7, 1973, on the theory of nuisance, request-ing both personal and property damages. Appellant answered by way of general de-nial and a demurrer. The cause proceeded to trial by jury which returned the verdict for appellee in the amount of $6,170.33. Appellant moved for a new trial, which was

overruled, and now appeals arguing under three propositions of error. The Oklahoma Municipal League filed a brief as amicus curiae arguing against the judgment of the trial court.

Appellant's first proposition reads:

"This case was initially and always has been against an improper defendant."

In this regard appellant notes the suit was originally filed against "The City of Talihina, a municipal corporation," as defendant, and that the pleading was later amended to name the defendant "The Town of Talihina, a municipal corporation." However, appellant argues the real defendant should be the "Talihina Public Words Authority." For the construction of the new sewer system the town of Talihina created the "Talihina Public Works Authority" as trustee under 60 O.S.1971 § 176 et seq., which pertains to "trusts for furtherance of public functions." Appellant bases its argument that the Authority is the proper party defendant upon its interpretation of 60 O.S. 1971 § 179, and contends that under this section the town is not liable for damages caused by the faulty sewer system.

Appellant points out that the Talihina Public Works Authority, as lessee, entered into an agreement with the town of Talihina as lessor, whereby the town agreed to lease to the Authority its existing and to-be-constructed sanitary sewer system. The lease was executed January 1, 1968, and was to continue for 50 years or until all indebtedness incurred by the system was paid. The purpose of the lease is found on its second page and reads as follows:

"The leased property is demised to the Authority for the purpose of enabling the Authority to assist the Lessor in the execution and performance of the public functions of the Lessor in respect of furnishing and providing adequate System services and facilities at all times during the term of this Lease Agreement."

The Talihina Authority is designated as a "public trust" in the lease agreement. These "trusts" under § 176 "may be created in real or personal property . . . with the state or any county, municipality, politi-cal or governmental subdivision, or governmental agency of the state as the beneficiary thereof . . . ." The town argues that due to its beneficial status it is not liable for the conduct of the trust due to the following italicized language in § 179:

"The trustee, or trustees, under such an instrument or will shall be an agency of the State and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created. *No trustee or beneficiary shall be charged personally with any liability whatsoever by reason of any act or omission committed or suffered in the performance of such trust or in the operation of the trust property*; but any act, liability for any omission or obligation of a trustee or trustees in the execution of such trust, or in the operation of the trust property, shall extend to the whole of the trust estate, or so much thereof as may be necessary to discharge such liability or obligation, and not otherwise." (emphasis ours)

However, the town admits that this section has not been interpreted by the Oklahoma Supreme Court, though the few cases on the subject of the trusts themselves describe them as "charitable trusts." *See, e. g., Board of County Comm'rs v. Warram*, Okl., 285 P.2d 1034 (1955).

On the other hand, appellee argues that the trust did not own the leased property, and further argues the trust is an agent of the town and the town, as principal, is liable for the torts of the trust. Appellee also notes that a lessee is not required to secure a franchise to operate a municipally-owned public utility within the corporate limits of that city or town, citing *Meder v. City of Oklahoma City*, Okl., 350 P.2d 916 (1960), and that therefore the trust cannot be viewed as a separate entity as can most private companies which are possessed of a franchise and have a certain autonomy apart from the municipal lessor.

In the amicus brief filed on behalf of appellant by the Oklahoma Municipal League, it is agreed the issue to be resolved is one of agency. The League argues § 179

states that the trust shall be an agent of the state and does not specifically extend this benefit to the town or city beneficiary; therefore, appellant town cannot be charged with the duties of a principal. Moreover, the League insists, the second sentence of § 179, which makes the municipal beneficiary personally immune from liability, resolves all doubts and its effect is to absolve the town from possible liability.

The two parties cite numerous cases which are inapplicable to the issue, an example of which is *State v. Garrison*, Okl., 348 P.2d 859 (1959). In this case, an indenture of trust was executed to create the Northeast Oklahoma Gas Authority. The initial beneficiary was to be the State of Oklahoma, and any municipal corporation located around Tahlequah, Oklahoma, could also become beneficiaries. The court in this case held that due to the unusual status of the Authority it was a separate entity from the beneficiaries involved, and was the agent of the state *and* of the cities and towns. However, this case does not resolve our deliberations, for *Garrison* specifically provided that "[a]ny consideration of cases involving trusts with a single beneficiary is not necessary to a decision of the issues herein involved." Thus to apply the rule in *Garrison* would obviously be inappropriate here.

As we read § 179 and the lease agreement, the beneficiary of the trust is appellant, and the trustees are the members of the Talihina Public Works Authority. Section 179 omits any mention of the trustor of the trust, but it is readily apparent that the town occupies a dual status—that of beneficiary and trustor.

■ There are two parts to the second sentence in § 179. Under the first part, no trustee or beneficiary can be held personally liable for acts or omissions in furtherance of trust purposes. We believe the intent of the legislature was to absolve from liability the members of the Authority as individuals; that is, they cannot be made liable out of their own personal funds. The word "beneficiary" must be read with the word "trustee" to convey the same meaning;

that is, the town councilpersons, as representatives of the beneficiary, are absolved from any personal liability in carrying out their covenants in the lease agreement wherein the town promised to "cooperate with the Authority to the end and that said Authority may efficiently operate and maintain the facilities of the Trust Estate. . . . ." The second part of sentence two of § 179 reinforces our view above and provides that any judgment against only the trust can be satisfied solely out of trust property. Liability of the beneficiary as an entity is not mentioned or for that matter neither is the liability of the creator of the trust.

■ We think that § 179 would apply only when the municipal trust itself is sued, a judgment is sought only against the trust assets, and the town is not made a party defendant. A reading of § 180 supports this interpretation, for it states, in part:

"[S]uch trust shall not be terminated while there exists outstanding any contractual obligations chargeable against the trust property, which, by reason of such termination *might become an obligation of the beneficiary of such trust.*" (emphasis ours)

Under this section, it would appear to be understood that the town is *also* a possible party defendant and can be held liable. Indeed, if the town is considered absolved of all liability by virtue of the fact that its sewer system was operated by its public words authority, then the town would be accomplishing indirectly what it cannot do directly; that is, the town would escape responsibility for proprietary functions such as sewer maintenance and repair, and for these acts there is no governmental immunity. *City of Tulsa v. Davis*, Okl., 376 P.2d 282 (1962); *City of Holdenville v. Moore*, Okl., 293 P.2d 363 (1956); *City of Mangum v. Garrett*, 200 Okl. 274, 192 P.2d 998 (1948). To hold that the town can escape liability and shift the burden of liability upon one of its branches of government would be in derogation of the existing case law that holds governmental immunity does not apply where the town engages in proprietary

functions. Further, to hold such a burden can be shifted would constitute a taking of appellee's property without just compensation, which is prohibited by the fifth amendment of the United States Constitution. Therefore, appellant's efforts to shield its activities with the cloak of a trust the town itself created cannot be condoned.

With the interpretation of § 179 thus disposed of, what connection does the Talihina Public Works Authority have with the town of Talihina? Oklahoma case law does not directly state that a public works authority is an agent of the town, though there is strong suggestion in the case of *Northeastern Oklahoma Building & Construction Trades Council v. Tulsa Metropolitan Water Authority*, Okl., 519 P.2d 488 (1974). In this case, the city's departmental authority was sued. The issue centered around whether the Authority was a public body for purposes of a statute which required the minimum wage to be paid. The court stated:

"We need not decide whether the Authority is a public body as contemplated by the statute in as much as [sic] we find that the *City* as a public body contracted with the Authority. It is therefore subject to the prevailing wage statutes." (emphasis ours)

Although the court declined to hold that the Authority was a separate entity, there is a strong suggestion the Authority is rather the *agent* of the municipality, for the court goes on to state:

"There is . . . no dispute that the Authority is engaged on behalf of the City of Tulsa, in the performance of a governmental function which would normally be exercised by the City."

■ In 62 C.J.S. *Municipal Corporations* §§ 550–555 (1949), a municipal department, such as the Talihina Public Works Authority, has been described as follows:

"As a general rule a municipal department, in discharging a duty primarily resting on the municipal corporation, acts as an agent or instrumentality of such corporation, even though the department

may have full power and authority in the particular matter.

. . . . .

"Liability is not imposed on such department in the absence of clear legislative intent to impose liability."

Thus, liability for departmental acts must rest upon the town as principal, and therefore the town of Talihina is a proper party defendant.

■ Appellant's second proposition reads: "The verdict of the jury and judgment upon such verdict is not sustained by sufficient evidence and is contrary to law."

Under this proposition appellant argues appellee's petition did not allege the fundamental elements of negligence and then goes on to argue the evidence does not prove negligence. It seems to us this begs the issue. Appellee's action was based upon nuisance and not negligence. The two actions of nuisance and ·negligence are completely separate torts and appellee did not have to plead or prove negligence to prove a nuisance. *Cities Service Oil Co. v. Merritt*, Okl., 332 P.2d 677 (1958). To follow appellant's rationale there could never be an intentional nuisance but only one created by negligence. Such is simply not the law and we find no merit to this proposition. *City of Ada v. Canoy*, 198 Okl. 206, 177 P.2d 89 (1947); *City of Holdenville v. Kiser*, 195 Okl. 189, 156 P.2d 363 (1945); *City of Weatherford v. Luton*, 189 Okl. 438, 117 P.2d 765 (1941); *Oklahoma City v. Tytenicz*, 171 Okl. 519, 43 P.2d 747 (1935).

■ Appellant's third and final proposition reads:

"The trial court erred in not ordering appellee to comply with the pretrial order, wherefrom appellant was surprised."

In this regard appellant argues both parties were to furnish the other with a list of witnesses pursuant to the pretrial order, and as appellee did not comply with the order, appellant was surprised at trial. However, the record does not contain a pretrial order and moreover appellee points out appellant did not furnish her with a list of appellant's witnesses. Other than a gen-

eral broad statement that it "was surprised," appellant does not point to one example in support nor does it state how it was prejudiced by a surprise. Under these circumstances we must conclude this proposition is without merit.

Affirmed.

BRIGHTMIRE, P. J., and NEPTUNE, J., concur.