STATE of Oklahoma ex rel. Jan Eric CARTWRIGHT, Attorney General of Oklahoma, Appellant,

v.

The OKLAHOMA INDUSTRIES AUTHORITY, a Public Trust, and Edward L. Gaylord, C. A. Vose, Edward Joullian, III, Stanton L. Young, John R. Parsons, Donald S. Kennedy, Dean A. McGee, and Willford A. Clark, Appellees.

No. 55128.

Supreme Court of Oklahoma.

April 21, 1981.

Rehearing Denied June 29, 1981.

Jan Eric Cartwright, Atty. Gen. of Oklahoma, Floyd W. Taylor, First Asst. Atty. Gen., Oklahoma City, for appellant.

Edward E. Soule and Peter T. Van Dyke, Lytle, Soule, Curlee, Harrington, Chandler & Van Dyke, and James E. Work, Shirk, Work, Robinson & Williams, Oklahoma City, for appellees.

Lana Jeanne Tyree and John F. Cooper, Oklahoma City, for amicus curiae, various School Districts and Educational Organizations, and Lewis Eubanks, resident taxpayer.

Gary L. Gallagher, Oklahoma City, for amicus curiae, Oklahoma City News Broadcasters Association, Inc.

BARNES, Vice Chief Justice:

In February of 1980, the Attorney General of the State of Oklahoma sought access to certain public records of the Oklahoma Industries Authority, a Public Trust created under the laws of Oklahoma. An Assistant Attorney General, and the legal representative of seven independent school districts, the Oklahoma Education Association, the Oklahoma Congress of Parents and Teachers, Inc., the Enid Education Association, the Tulsa Classroom Teachers Association, and the Ponca City Educators Political Action Committee, visited the office of the Oklahoma Industries Authority, in order to inspect and copy various documents desired by the education associations and the Attorney General.

While attempting to inspect such documents, the Assistant Attorney General and the legal representatives of the educational associations discovered that the Trust records, save for a few documents, were not kept in the office of the Trust, but, rather, were scattered throughout Oklahoma and Canadian Counties in some thirteen different locations. They also f und that the Trust office was not open on a regular basis, and that the Trust's only employee, the Trust's general manager, was in the office between three and four days a week, and on those days he was in and out and kept no regular schedule. Additionally, the parties learned that the manager of the Trust did not know, and could not tell them, where the vast majority of the records they sought were located. Although the general manager, for the most part, attempted to cooperate with the legal representatives of the educational associations and the State of Oklahoma, the records were not readily available. Additionally, some of the representatives seeking the records testified that the general manager, Mr. Virgil Sprankle, indicated that had he known they were coming he would have burned the records.

Because of the difficulty encountered in inspecting the records, because the records were not kept in the Trust office, and because the Trust office was not open on a regular basis, the Attorney General, Jan Eric Cartwright, on behalf of the State, brought an action against the Oklahoma Industries Authority, and its trustees, asking the trial court to issue a Writ of Mandamus requiring the Trust to comply with the record-keeping duties imposed upon it by statute and the Trust Indenture, all of which required the Trust to keep records and to make the records available to the public.

The statutes and Trust-Indenture provisions relied upon by the Attorney General are as follows:

Title 60 O.S.Supp.1979, § 178(d), which establishes mandatory duties to keep records, provides in part:

" . . . Records of the trust and minutes of the trust meetings of any public trust shall be written and kept in a place, the location of which shall be recorded in the office of the county clerk of each county, wherein the trust indenture shall be recorded. Such records and minutes shall be available for inspection by any person during regular business hours. . . . "

Article V(3) of the Oklahoma Industries Authority Trust Indenture, which requires that all records be maintained in the Trust office and open to public inspection during business hours, provides in relevant part that:

"(3) . . . The secretary shall keep minutes of all meetings of the Trustees and shall maintain complete and accurate records of all their financial transactions, all such minutes, books, and records to be on file in the office of the Trust. All meetings of the Trustees shall be open to the public, and the books, records, and minutes of the Trustees shall be considered as public records and available for inspection during the business hours of any business day by any interested party."

The provisions of 51 O.S.1971 § 24, which is the general statute, require all public officers to maintain records open for inspection, and provide:

"It is hereby made the duty of every public official of the State of Oklahoma, and of its sub-divisions, who are required

by law to keep public records pertaining to their said offices, to keep the same open for public inspection for proper purposes, at proper times and in proper manner, to the citizens and taxpayers of this State, and its sub-divisions, during all business hours of the day; ..."

By way of defense of the action, the Trust plead inter alia that it had substantially complied with all statutes.

After an extensive hearing on the matter, the trial court refused to issue the Writ of Mandamus prayed for. The Attorney General, joined by the amicus educational organizations, appealed from the trial court's ruling, asserting, among other things, that the trial court misunderstood and misinterpreted the duties imposed upon the Trust by the various statutes and its Trust Indenture.

### I.

In order to determine whether the trial court erred in refusing to issue the Writ of Mandamus, we must first determine what duties are imposed upon the Oklahoma Industries Authority by virtue of Oklahoma statutory law and its Trust Indenture. More particularly, we must determine (1) what records the Oklahoma Industries Authority is required to maintain and make available to the public; (2) where such records are to be kept; and (3) at what times are said records to be open and available to the public. In its Findings of Fact and Conclusions of Law, the trial court found the following to be the records of the OIA which must be maintained and made available to the general public:

(a) Trust Indentures.

(b) Minutes of all meetings of the Trustees.

(c) Notice of all meetings.

(d) Correspondence initiated or received by OIA.

(e) All tax records.

(f) Bond transcripts.

(g) Bank accounts.

(h) Leases, deeds, mortgages.

(i) Bookkeeping records and audits.

(j) Opinions of the attorney for OIA and other legal work of said attorney, once they have been transmitted to OIA.

This list of the trial court would seem to be all-encompassing, but an analysis of the list shows such not to be the case. For example, the trial court's list would not include contracts entered into by the Trust relating to management fees, employees, rentals, office facilities, independent contractors, trustee banks, construction, labor, services, and attorney fees. Nor would the trial court's list include policies of insurance on its trustees, agents and employees, oaths of office required by 60 O.S. § 178, conflict-of-interest statements required by 60 O.S. § 178.8(4), official statement, prospectus, or other offering document required by 60 O.S. § 178.2, and documents relating to reimbursement of expenses to OIA Trustees as authorized by 60 O.S. § 178.

Although the above list of "non-included" records is not exhaustive, it illustrates the narrow restrictive interpretation made by the trial court. We find that such a restrictive interpretation is inappropriate and contra to the intent of the statutes of Oklahoma and the Oklahoma Industries Authority Trust Indenture itself. The intent of the statutes and the Trust Indenture is to subject public trusts and its business and management to public scrutiny. Nothing in the statutes indicates a legislative intent to limit the scope of the public's scrutiny. In including the word "records" within the statute, the Legislature sought not to limit the word by defining it. The absence of a definition does not, however, license the courts of this State to narrowly construe "records" as used in the statute, as such a narrow construction would be at odds with the legislative policy behind the requirement that public trusts maintain written records and keep them open and available to public inspection.

In *AMF Tubescope Company v. Hatchel*, 547 P.2d 374, 379 (Okl.1979), this Court stated, as it has in numerous cases in the past, that:

"... a statute should be given a sensible construction, bearing in mind the evils

intended to be avoided or the remedy afforded."

The public policy behind requiring that trusts maintain records open for public inspection is in part to insure that the public business is carried on in an honest and efficient manner. Writings coming into the hands of public officers in connection with their official functions should, therefore, be accessible to members of the public so that the public will have an opportunity to determine whether those who have been entrusted with the affairs of the government are honestly, faithfully, and competently performing their duties as public servants.

In *MacEwan v. Holm*, 226 Or. 27, 359 P.2d 413 (1961), the Oregon Supreme Court, in considering a public record statute, found, as we do today, that one of the broad purposes to be served in making records of the government accessible to the general public is to insure that the business of the people is being conducted honestly and efficiently. The Oregon Court noted that the availability of such records also served an additional purpose of allowing individuals to use such records for their private purposes, and not merely to serve the interests of the public in general. Recognizing that the inspection statutes serve such broad purposes, the Oregon Court then stated:

"Since the right of inspection under our statutes is intended to serve these broad purposes, the character of the writing which is subject to inspection is correspondingly broad. . . ." [359 P.2d 413 at 418]

Like our sister jurisdiction, we find that the purposes to be served by requiring that the public have access to records of public trusts are broad, and the scope of that access should be correspondingly broad. Nothing in the statute before us would indicate a contra legislative intent.

In fact, the Legislature has specifically defined the term "record" to be broad and all-inclusive. In the Preservation of Essential Records Act, the Legislature, at 67 O.S. 1971 § 153(b), defines "record" as follows:

"Record means document, book, paper, photograph, microfilm, sound recording, or other material, regardless of physical form or characteristics, *made or received* pursuant to law or ordinance or *in connection with the transaction of official business* but does not include library and museum material made or received solely for reference or exhibition purposes." [Emphasis added]

Under the provisions of 25 O.S. § 2, this Court is required to hold the term "record" in the statute before us has a similar meaning as that in Preservation of Essential Records Act, unless a contrary intention plainly appears. Title 25 O.S.1971 § 2 provides:

"Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears."

As the term "record" is defined to include a document, book, paper, photograph, microfilm, sound recording, or other material, regardless of physical form or characteristics, made or received in connection with a transaction of official business, and as the statute before us shows no intent to use the word "record" in a different manner, we are compelled to hold that the Legislature intended that such a broad definition be encompassed within 60 O.S. § 178(d). For this reason, we hold that the trial court erred in narrowly construing that term.

In so holding, we note that the trial court further restricted the term "record" when it held (1) that documents, books, and other records of the Oklahoma Industries Authority, apparently received prior to December 1, 1976, were not "records" within the meaning of the statute; and (2) that the records of the Oklahoma Industries Authority Bank Account No. 166072 were not an Oklahoma Industries Authority records.

In determining that all books, minutes and records prepared or received prior to December 1, 1976, were not "records" as that term is used in 60 O.S. § 178(d), the trial court relied upon the fact that 60 O.S. § 178(d) was amended in 1976. The trial court reasoned that the amended statute should be given prospective and not retrospective effect. However, in making this

ruling, the trial court ignored the provisions of 60 O.S. 1971, § 178(b), which was in effect until the amended version of that section became effective. Subsection (b) of Section 178 provided:

"After the effective date of this act, meetings of trustees of any public trust shall be open to the public to the same extent as is required by law of other public boards and commissions. *All records of said trust shall be public records and shall be kept in a place, the location of which shall be recorded in the office of the county clerk of each county, wherein the instrument shall be recorded.*" [Emphasis added]

Thus, we see that the specific provisions of Section 178, even prior to its 1976 amendment, required trustees to keep their records in a place, the location of which must be recorded in the office of the county clerk. The characterization of these records as public records made them subject to public inspection. Accordingly, the amendment of Section 178 did not alter the record-keeping duties imposed upon the Trustees. Thus, the trial court was mistaken in singling out the effective date of the amended statute, December 1, 1976, as the date on which the Trustees' obligations to keep records open for inspection began.

In point of fact, like record-keeping duties have been imposed upon every public official of the State since 1943, when the Legislature enacted 51 O.S. § 24, which provides in part:

"It is hereby made the duty of every public official of the State of Oklahoma, and of its sub-divisions, who are required by law to keep public records pertaining to their said offices, to keep the same open for public inspection for proper purposes, at proper times and in proper manner, to the citizens and taxpayers of this State, and its sub-divisions, during all business hours of the day. . . . "

The Trustees of the Trust, as public officials, were duty bound to maintain their records, and make them open for public inspection, long before the 1976 amendment to Section 178 of Title 60. Thus, the trial court's contra finding was in error.

■ Lastly, we find that the trial court erred in holding that the Oklahoma Industries Authority's Account No. 166072, and instruments and records dealing with that account, were not OIA records. The sole ground for the trial court's finding was that the funds "funneled through" the account did not belong to OIA. Yet, the trial court seems to ignore the fact that it is an OIA account, which requires the signatures of OIA Trustees, and thus is clearly a financial record of the Trust. The motive for establishing the account, to aid one of its lessees, is immaterial in determining whether the account is an OIA record. To say that this were not the record of the Trust would severely limit the right of the State's citizenry to determine whether the public officials who run such Trust are performing their duties honestly, competently, and efficiently. Such "flow through" accounts *possibly* could be used for illegal purposes, such as the avoidance of taxes by a Trust lessee. If the public were not allowed access to such Trust records, the public could never ascertain whether such Trust accounts were lawful and proper. For this reason, and for the reason that the term "record", as shown above, is to be broadly construed, and for the further reason that the Trust Indenture requires the secretary to keep "all financial records", we hold that the trial court erred in holding that the records of this account were not Trust records, open to public inspection.

## II.

Having determined what records must be maintained and made accessible for public inspection, we now determine where and when such records are required to be made available.

The trial court held that such records could be kept in numerous locations, and that the Trust was not required to keep the records in a single office, the location of which would be registered with the County Court.

Additionally, the trial court held that the Trust was not required to keep its office open every day. Rather, the court held that the Trust could, in the alternative, merely post on the front door the hours

that they were open, and list the various offices at which the Trust records could be found. No requirement was made that the notice indicate where specific records might be located.

■ Again, we find the trial court's interpretation of the duties imposed upon a public trust to be in error. The very intent of the public inspection statutes is to enable the public to have ready access to the records of a public entity. This ready access could easily be defeated by a public entity, if that were its desire, by scattering the records in dozens of different locations. In such instances, members of the general public would be left to flounder from location to location on a veritable scavenger hunt in search of the particular records desired. We hold that such scattering of records was not the intent nor desire of the Legislature. While it is true that, in many instances, as in the case before us, it may be more convenient to operate the Trust if the Trust records and instruments were in various offices, such as the office of their attorney, their accountant, and trustee bankers, it was not the inconvenience to the Trust that the Legislature was most concerned with when it drafted the statute before us. Rather, the Legislature was concerned with the convenience to the general public. The Legislature provided that the records be kept in *a place*, the location of which would be registered with the County Clerk. Additionally, the Trust Indenture provided that the records be kept in *the office* of the Trust.

The Legislature, in requiring that the records be kept in a single location, was not, however, unmindful that public officers, in order to operate, may need documents in other than a single location. Thus, the Legislature has specifically provided for copying of trust records at 67 O.S.Supp.1972, § 301, which provides:

> "Any public officer of the state or any *... public trust, authority* or agency ... may cause any or all records, papers, or documents kept by him to be photographed, microphotographed or reproduced on film.... Such photographs, microphotographs or photographic film shall be deemed to be original records for

all purposes, including introduction in evidence in all courts or administrative agencies...." [Emphasis added]

Thus, when a trust finds it more convenient or necessary to have part of its records in other than the office designated in the office of the County Clerk, the convenience of the trust can be accommodated by reproducing the records sought to be removed. Through this process, trusts can more effectively go about their business and at the same time provide ready access to their records. As noted above, the inconvenience that such reproducing might cause the trust is secondary to the inconvenience caused to members of the general public who seek to inspect public records.

■ Such, we hold, also applies to records of a trust in the hands of its attorney. Whether a trust record is available for public inspection should not, as the trial court held, depend upon whether the record has been transmitted to the trust. If this were the case, trusts wishing to secrete records could merely see that its attorney never transmitted them to the trust office. The potential for such abuse is particularly present in the case before us, as one of the Trust attorneys is also an Assistant General Manager of the Trust.

■ We would note here that at no time during the trial proceedings did the Trust evoke the attorney-client privilege, and we would note that such a privilege is not generally available to the Trust, at any rate. Under the provisions of 12 O.S. § 2502(D) of this State's new evidence code, there is no attorney-client privilege "As to a communication between a public officer or agency and its attorney unless the communication concerns a pending investigation, claim or action and the court determines that disclosure will seriously impair the ability of the public officer or agency to process the claim or conduct a pending investigation, litigation or proceeding in the public interest."

Additionally, under the provisions of 12 O.S.Supp.1978 § 2502, the privilege, if it exists at all, goes to "confidential" communications, which are defined as communications "not intended to be disclosed to third

parties other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

■ We find no justification for the trial court's ruling that records in the hands of the Trust attorneys are not Trust records until they are transmitted to the Trust. We hold that they are, and that such records or copies thereof are to be kept available at the Trust office.

■ As noted above, the trial court, in addition to holding that the Trust was not required to keep their public records in a single location, also held that they were not required to keep regular business hours. This holding is also contra to both the statutory provisions, mentioned above, and the Trust Indenture. Both provide that the records are to be available for public inspection during regular business hours. While it is true that business hours vary from business to business, some opening at 8:00 o'clock a. m., and others opening at 9:00 o'clock, and some close at 4:00 p. m., and others at 5:00 or 6:00 p. m., this does not mean that the phrase "regular business hours" is a meaningless phrase.

In *Casalduc v. Diaz*, 117 F.2d 915, 916 (1st Cir. 1941), the United States Court of Appeals for the First Circuit, in construing a federal rule which provided that the clerk's office shall be open during business hours, stated:

> "The term 'business hours' is not defined in the rule. In its natural sense, the term means those hours during which persons in the community generally keep their places open for the transaction of business."

The Court went on to find that the closing of the clerk's office in Puerto Rico on Saturday afternoon was permissible under the rule, as business hours in Puerto Rico generally did not extend into the afternoon hours on Saturdays.

We agree with the rationale used by the U.S. Court of Appeals in this case. Accordingly, we hold that the phrase "regular business hours" means those hours during which persons in the community keep similar businesses open for the transaction of business. In so holding, we recognize, of course, that the business-hour customs may vary from industry to industry and business to business. As the public Trust involved in this litigation is an arm of the State, we think it appropriate that the term "regular business hours" of such Trust be dictated by the "regular business hours" of most State offices. As is commonly known, most State offices are not open on the weekend and on State holidays, but are open on week-day mornings and afternoons for approximately eight hours. This being the case, we hold that the phrase "regular business hours", as used in 60 O.S.Supp.1976 § 178, requires a public trust to make its records available for public inspection on week-day mornings and afternoons.

### III.

■ We next determine whether the trial court erred in refusing to grant the Writ of Mandamus prayed for. The primary reason given by the trial court for refusing to issue the Writ was that it anticipated a good-faith compliance with the requirements of the statute and the Trust Indenture by the Trust. However, what the trial court was anticipating was compliance with the statute and Trust Indenture as the court understood them. As we have seen, the trial court's interpretation of the requirements upon the Trust was in error.

An examination of the record does not even suggest that compliance with the statutory or Trust Indenture requirements, as defined above, could be anticipated. This being the case, we hold that anticipatory compliance does not constitute sufficient grounds upon which to deny the issuance of the Writ. Nor do we find any validity to the trial court's denial of the Writ on the basis that members of the media were present during one of the attempts of the Attorney General's office to inspect the records. We would note that members of the news media are also members of the general public, and are thus entitled to inspect the records themselves.

Lastly, we see no validity to denying the Writ on the ground that no notice was given prior to the requested inspection, and

because an attempt was made to record one of the confrontations between those seeking the records and the Trust employees and its agents.

Because the record clearly shows that the Oklahoma Industries Authority is not complying with the duties imposed upon it by statute and its Trust Indenture, and because there is no adequate remedy at law available to those seeking to inspect the records of the Trust, we hold that the trial court abused its discretion in failing to issue a Writ of Mandamus, requiring the Trust to comply with the duties imposed upon it by the Trust Indenture and the statute.

For the above stated reasons, we reverse the trial court's action, and remand the cause to the trial court with instructions. In so doing, this Court is not unmindful that compliance with the statute, because of the number of documents which of necessity need to be moved and/or copied, cannot be accomplished overnight. Therefore, the Writ of Mandamus to be issued is to require the defendant to fully comply with its duties, as defined therein, within a reasonable time, which we hold under the facts and circumstances of this case is thirty days.

On remand, the trial court is instructed to issue a Writ of Mandamus, requiring the Oklahoma Industries Authority to maintain either an original or copy of all of its records, as defined above, in the Trust office, and to make such records available for inspection and copying at that office during the week, from at least 9:00 in the morning until 4:00 in the afternoon. In addition, the trial court is instructed to require the Oklahoma Industries Authority to fully comply with its duties as defined in this opinion, within thirty days of the date of this opinion.

ACTION OF THE TRIAL COURT REVERSED, AND THE CAUSE REMANDED TO THE TRIAL COURT WITH INSTRUCTIONS TO ISSUE A WRIT OF MANDAMUS.

LAVENDER, WILLIAMS, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

IRWIN, C. J., and HODGES and OPALA, JJ., concur in part and dissent in part.

HODGES, Justice, concurring in part, dissenting in part:

I disagree with the stringent directives of the majority opinion which requires that all records of OIA must be kept in a *single* location and must maintain "regular business hours" as any public agency.

The obvious intent of the statute is to assure public access to records. The trial judge properly addressed this issue when he ordered the following:

1) OIA file with the County Clerk information concerning the several locations where records are kept; and

2) that OIA keep its office open during normal business hours, or post a notice describing where its records are maintained, and information as to whom should be contacted if record review is desired.

In my opinion the order of the trial judge assures public access without imposing unnecessary administrative duties.

I am authorized to state that Chief Justice Pat Irwin and Justice Marian Opala concur in the views herein expressed.