OSCN Found Document:Question Submitted by: Mike Buhl, Chairman, Board of Trustees, Oklahoma Housing Finance Agency

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: Mike Buhl, Chairman, Board of Trustees, Oklahoma Housing Finance Agency
2023 OK AG 13
Decided: 12/01/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 13, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Must the Oklahoma Housing Finance Agency ("OHFA") comply with the Central Purchasing Act, title 74, sections 85.1--85.44E of the Oklahoma Statutes ("CPA")?
2. Must the OHFA comply with the Oklahoma State Finance Act, title 62, sections 34--34.501 of the Oklahoma Statutes ("SFA")?
3. Must the OHFA comply with the provisions of title 61, sections 61--65 of the Oklahoma Statutes ("State Consultants Act" or "SCA"), regarding the state construction managers and consultants?
I. 
SUMMARY
¶1 Generally, OHFA is exempt from the CPA, SFA, and SCA. Compliance with these statutes is mandatory if an entity is a "state agency," generally defined as an office or officer that is a part of the executive or judicial branch. The OHFA is a public trust whose beneficiary is the state, and its trustees are public officers. However, neither the OHFA nor its trustees are part of the executive branch. Accordingly, the OHFA and its trustees are not within the scope of the term "state agency" and, therefore, generally not subject to each of these statutes. Notwithstanding, the SFA includes specific provisions that require action by a public trust having the State of Oklahoma as its beneficiary, such as OHFA. Therefore, the OHFA must comply with these limited provisions of the SFA.
II.
BACKGROUND
A. Public Trusts in Oklahoma.
¶2 This office previously provided a thorough background on the history of Oklahoma's public trusts. See 2017 OK AG 4, ¶¶ 1--5. That background is incorporated into this opinion by reference. In summary, trusts for the benefit of the State, a county, or a municipality may be established under the Trusts for Furtherance of Public Functions provisions of Oklahoma law. See 60 O.S.2021, §§ 176--180.4[1]; see generally M. Thomas Arnold, Public Trusts in Oklahoma, 19 Tulsa L.J. 192 (1983). Public trusts may be authorized to, among other things, "provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of the state[.]" 60 O.S.2021, § 176(A); see also Shotts v. Hugh, 1976 OK 73, ¶ 13, 551 P.2d 252, 254 ("Trusts for the benefit of the public may be established with a broad field of objectives as long as the objectives encompass a benefit to a large class of the public or lessen the burdens of government."). Beneficiaries may include the State of Oklahoma, its counties or municipalities, or any combination thereof. 60 O.S.2021, § 176(A). A state beneficiary public trust may engage in any activity in which the State has the power to engage. Application of S. Okla. Dev. Tr., 1970 OK 118, 470 P.2d 572.
¶3 Trustees govern public trusts and their affairs, and the trustees are appointed and removed by the governing body of the beneficiary. 60 O.S.2021, §§ 176(A), 176.1(B)(1). In cases where the State is the beneficiary, the Legislature and the Governor must approve the public trust, and the trust instrument must be approved as to form by the Attorney General. Id. §§ 176(A), 177. Public trusts are presumed to be entirely separate and distinct from the beneficiary. Id. § 176.1. In their operations, Oklahoma law provides:
Except where the provisions of the trust indenture or of Section 176 et seq. of this title, or of any other law written specifically to govern the affairs of public trusts, expressly requires otherwise, the affairs of the public trust shall be separate and independent from the affairs of the beneficiary in all matters or activities authorized by the written instrument creating such public trust including, but not limited to, the public trust's budget, expenditures, revenues and general operation and management of its facilities or functions . . . .
Id. § 176.1(D) (emphasis added).
B. The OHFA.
¶4 OHFA is a public trust created under title 60, section 176(A)(1), and by trust indenture executed on May 1, 1975. See also OHFA Third Amended Trust Indenture (Aug. 19, 2002) (on file with author) [hereafter, the Trust Indenture]. OHFA operates for the benefit of the State by fulfilling the public purposes outlined in the Trust Indenture. See Trust Indenture, supra at 1. Generally, the OHFA was established to provide adequate housing for the State's citizens and eliminate substandard housing. Shotts v. Hugh, 1976 OK 73, 551 P.2d 252. The Trust Indenture identifies some of the OHFA's purposes and powers as follows:
(6) to . . . supply services and facilities for the conservation and implement of the public welfare and protection and promotion of the public health to the [State] . . . to such extent and in such manner as now is or hereafter shall be a proper function of the [State] as or if expressly authorized by law for the furtherance of the general convenience, welfare, public health and safety of the State of Oklahoma and its inhabitants.
(7) To promote the development of industry and culture and industrial manufacturing, cultural, and educational activities within the territorial limits of the Beneficiary and to thereby provide industrial and cultural facilities and additional employment and activities which will benefit and strengthen culture and the economy of the Beneficiary.
. . . .
(9) To conduct planning and coordination studies for any and all phases of Oklahoma's economic life, problems, and activities deemed by the Trustees to be needful of attention and planning, and to study and analyze state policies as expressed in the statutes and administrative rulings, as they may affect Oklahoma's economic, agricultural, commercial, mining, oil and gas, housing and recreational, and industrial conditions and progress and to examine the operation of governmental functions, looking to improved coordination between state and local and between state and federal functions and activities, greater economy in operation, and improvement of services to the people of the State.
(10) To attract agricultural, commercial, industrial, mining, oil and gas, housing and recreational firms and businesses to the State by utilizing its funds, credit, and the talents of its staff and others in any and every progressive manner for such purpose.
. . . .
(12) To support and assist the efforts of State, regional, and local development corporations, public trusts, industrial or housing committees, chambers of commerce, labor organizations, and other similar public and private agencies to obtain new, and to foster expansion and/or use of, existing agricultural, commercial, industrial, mining, oil and gas, housing, and recreational facilities or enterprises within the State.
Trust Indenture, supra at 7--8.
¶5 Concerning financial matters, the Trust Indenture establishes that indebtedness incurred by the Trustees on behalf of OHFA "shall not constitute an indebtedness of the [State]," but instead "shall constitute obligations of OHFA payable solely from the Trust Estate[.]" Trust Indenture, supra at 13. Similarly, the State has "no legal title, claim, or right to the Trust Estate, its income, or to any part thereof, or to demand or require any partition or distribution thereof." Trust Indenture, supra at 23.
¶6 OHFA thus exists to further public functions. It is controlled by the Trust Indenture and its trustees, who were duly appointed and have taken an oath of public office. Finally, the OHFA and its trustees operate in all respects, including finances, separately and distinctly from the State.
C. History of Attorney General Opinions Concerning State Beneficiary Public Trusts and the CPA. 
¶7 This office initially addressed the applicability of the CPA to state beneficiary public trusts in 1984 OK AG 135. Noting the absence of "public trusts" from title 74, section § 85.2, this office looked to the dictionary definition of "agency" and determined that public trusts are a "state agency." 1984 OK AG 135, ¶ 2. This office next determined that because title 60, section 178(a) (1981) provides that the trustees of a public trust are public officers, they are within the definition of "state agency" in section 85.2 of the CPA. Id. ¶ 4. However, different administrations of this office reversed the conclusion that public trusts are a "state agency" but never withdrew this conclusion found in 1984 OK AG 135.
¶8 First, in 1986, this office determined that while the public trustees are an "agency of the state" under title 60, section 179 (1981), that agency status only pertains to limitations of their liability and is not a declaration that the trustees are a state agency.[2]
¶9 That opinion also concluded that the trust cannot be a "state agency" because its legal status requires that it be separate from its beneficiary (the State). Id., ¶ 18. Subsequently, this office affirmed the 1986 opinion, reasoning that the Legislature did not intend for public trusts to be a part of the executive branch. 1996 OK AG 47(withdrawing a 1980 opinion concluding that a public trust is an agency of the state). However, neither the 1986 nor the 1996 opinion withdrew the irreconcilable conclusions reached in the 1984 opinion. Accordingly, with competing conclusions in the 1984, 1986, and 1996 opinions, this opinion reconsiders whether OHFA, as a state beneficiary public trust, is a state agency and, therefore, subject to the CPA, SFA, and SCA.
III.
DISCUSSION
A. Standard of Review.
¶10 It is settled that "[t]he goal of any inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature." Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213, 219. "The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses. If a statute is plain and unambiguous, it will not be subjected to judicial construction, but will receive the effect its language dictates." Id. (footnotes omitted). If the legislative intent cannot be ascertained from the language of a statute, as in the cases of ambiguity, we must apply rules of statutory construction. YDF, Inc. v. Schlumar, Inc., 2006 OK 32, ¶ 6, 136 P.3d 656, 658. "The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation." In re J. L. M., 2005 OK 15, ¶ 5, 109 P.3d 336, 338. When a statute is ambiguous, legislative intent is ascertained from the statutory context. This includes reading the "whole act in light of its general purpose and objective considering relevant provisions together," and resolving any doubt by looking to "other statutes relating to the same subject matter." McIntosh v. Watkins, 2019 OK 6, ¶ 4, 441 P.3d 1094, 1096. Consideration is also given to the "various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying the intent." YDF, 136 P.3d at 658. Additionally, statutes must be interpreted to give a "reasonable construction, one which will avoid absurd consequences if this can be done without violating legislative intent." McIntosh, 2019 OK 6, ¶ 4, 441 P.3d at 1096.
B. Under the CPA, a state beneficiary public trust formed under title 60, sections 176--180 of the Oklahoma Statutes, such as the OHFA, is not a "state agency" and is therefore not governed by the CPA.
¶11 The CPA, title 74, sections 85.1--85.45E, governs the acquisition of goods and services by most state agencies. Indiana Nat'l Bank v. State of Oklahoma ex rel., Dep't of Hum. Servs., 1993 OK 101, ¶ 12, 857 P.2d 53, 60. A "state agency" is defined by the CPA as:
[A]ny office, officer, bureau, board, counsel, court, commission, department, institution, unit, division, body or house of the executive or judicial branches of the state government, whether elected or appointed, excluding only political subdivisions of the state[.]"
[3] 
74 O.S.2021, § 85.2(27).
¶12 Thus, whether the OHFA and its trustees are subject to the CPA depends on whether the OHFA is an office or its trustees are officers of the executive or judicial branch. For the reasons set forth below, this office concludes that neither the OHFA nor its trustees are an office or officers of the executive branch of state government and, therefore, are not subject to the CPA.
¶13 To begin, public trusts are not expressly within the CPA's definition of "state agency." Elsewhere in Oklahoma statutes, the Legislature has explicitly included a public trust in the scope of a particular legislative act.[4] Accordingly, the absence of "public trust" in the CPA's definition of "state agency" indicates that the OHFA is not subject to its provisions. Arguably, however, by "excluding only political subdivisions of the state" from the definition of "state agency," the statutory text also suggests the intention that a public trust is incorporated into the definitional term and, therefore, subject to the CPA. Id. (emphasis added). As a result, ambiguity exists, at least to a degree. This office must look to case law and other statutes relating to public offices and public trusts in title 60 of the Oklahoma Statutes.
¶14 Concerning public office and public officers, Oklahoma law is settled. Before statehood, the Oklahoma Supreme Court held:
A public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised for the benefit of the public. 
Guthrie Daily Leader v. Cameron, 1895 OK 71, ¶ 8, 41 P. 635, 636 (emphasis added). For nearly the last century, Oklahoma City v. Century Indem., 1936 OK 589, 62 P.2d 94, has been the leading case on this issue. There, the Court distilled the standard into a trio of elements to determine what constitutes a "public office" and what makes an individual an "officer." See Id.. at ¶¶ 20--26. Accordingly, for a position to constitute an office, all three of the following elements must be satisfied:
1. The position in question was created or authorized by law;
2. The law imposes certain definite duties upon the position holder; and
3. The duties imposed involve the exercise of some portion of sovereign power.
Id.
¶15 First, the position of public trustee was created by law. The Oklahoma Public Trust Act provides for the creation of trusts for the "furtherance and accomplishment of any authorized and proper public function or purpose" of the state, any county, any municipality, or any combination thereof. 60 O.S.2021, § 176(A). Oklahoma statute creates the position of a trustee, and the law imposes certain duties upon a trustee. 60 O.S.2021, § 176.1; 178. Where the State of Oklahoma is the named beneficiary, the Governor, with the advice and consent of the Senate, appoints trustees for staggered terms of specified durations. 60 O.S.2021, § 178(B). The presence of a definite tenure and the establishment of a position by force of law help establish a position as a public office. Guthrie Daily Leader, 1895 OK 71, 41 P. 635.
¶16 Second, the law imposes duties on the public trustees. The trustees of a public trust have established duties, including maintaining certain records as public and making them openly available for public inspection. 60 O.S.2021, § 178(D); State ex rel. Cartwright v. Oklahoma Indus. Auth., 1981 OK 47, 629 P.2d 1244. Additionally, the Public Trusts Act plainly provides that a public trust must comply with the Open Meeting Act. 60 O.S.2021, § 178(D).
¶17 Concerning the requirement that an officer or office is invested with a "portion of the sovereign power," the OHFA and its trustees were organized to further and accomplish public functions and public purposes. As a safeguard to their performance of established duties and obligations, a trustee must take an oath of office and give a bond for faithfully performing his duties. Id. §178(A). Such requirements are indicia of public office. Guthrie Daily Leader, 1895 OK 71, 41 P. 635. Furthermore, trustees are subject to removal from office for causes like those concerning other public officials. 60 O.S.2021, § 178; 22 O.S.2021, § 1181; 51 O.S.2021, § 51. Indeed, then, they are invested with a portion of the sovereign power. Accordingly, OHFA, a state beneficiary public trust, is a public office, and its trustees are public officers.[5] This determination is not dispositive, however, of whether the CPA applies to the OHFA and its trustees; this office must also determine if either is a part of the executive branch.
¶18 A review of laws applicable to public trusts and established case law demonstrates that the Legislature intended for public trusts to be separate from the executive branch. First, the provisions of title 60, section 176.1(A) provide that state beneficiary public trusts are presumed "to exist as a legal entity separate and distinct from" the State. 60 O.S.2021, § 176.1(A)(2). See also State ex rel. Williamson v. Garrison, 1959 OK 260, ¶ 18, 348 P.2d 859, 863 (noting the distinction between a public trust and its beneficiary). Indeed, this section unequivocally provides that the presumption of separateness applies to all purposes of Oklahoma law. Not only do public trusts exist separately from the executive branch, but all affairs of the public trust shall, for all matters and activities, be separate and distinct from the executive branch of the state government. 60 O.S.2021, § 176.1(D). Specifically, this section provides:
Except where the provisions of the trust indenture or of Section 176 et seq. of this title, or of any other law written specifically to govern the affairs of public trusts, expressly requires otherwise, the affairs of the public trust shall be separate and independent from the affairs of the beneficiary in all matters or activities authorized by the written instrument creating such public trust including, but not limited to, the public trust's budget, expenditures, revenues and general operation and management of its facilities or functions; provided, that either the public trust or the beneficiary may make payment of money to the other unless prohibited by the written instrument creating such public trust or by existing state law.
60 O.S.2021, § 176.1(D) (emphasis added).
¶19 Accordingly, with its existence and all affairs separate from the State, the legislative intent is plain: neither the OHFA nor its trustees are part of the executive branch of state government. A 2007 decision by the Oklahoma Supreme Court confirms that this is the proper determination. Oklahoma City Zoological Tr. v. State ex rel. Pub. Emps. Rels. Bd., 2007 OK 21, 158 P.3d 461 (provisions of title 60, section 179 providing that the trustee under a public trust shall be an agency of the state only means that the trustee is absolved from personal liability as an agent of the state) (citing McKosky v. Town of Talihina, 1977 OK CIV APP 27¶ 13, 581 P.2d 482, 485). Accordingly, this office concludes that the Oklahoma Housing Finance Agency is not part of the executive branch of state government and is, therefore, not subject to the CPA.[6]
C. OHFA is exempt from the SFA except the provisions that specifically apply to state beneficiary public trusts.
¶20 The term "state agency" is defined in the SFA as "any agency, board, bureau, commission, or other entity organized within the executive department of state government." 62 O.S.2021, § 34.3(B).[7] As noted above, a state beneficiary public trust is not an entity of the executive branch of the state government. See 60 O.S.2021, §§ 176--180.4. Consequently, a public trust formed under title 60, section 176, does not fall within the SFA's special definition of "state agency" and is therefore generally not governed by the SFA. However, the legislature deliberately included specific provisions in the SFA that require action not only by state agencies but also by "public trust[s] having the State of Oklahoma as a beneficiary . . . ." 62 O.S.2021, § 34.11.3(C) (requiring state beneficiary public trusts to submit publications to the Chief Information Officer); 62 O.S.2021, § 34.11.4 (requiring state beneficiary public trusts to submit forms to the Chief Information Officer). Accordingly, OHFA must only comply with the provisions of the SFA that specifically apply to state beneficiary public trusts.
¶21 It is, therefore, the official Opinion of the Attorney General that:

1. 1984 OK AG 135is hereby withdrawn.
2. OHFA, as a state beneficiary public trust formed under title 60, sections 176--180 of the Oklahoma Statutes, is an agent of its principal/beneficiary the State and exists outside of the executive branch of state government. Therefore, OHFA does not fall within the definition of "state agency" in the CPA and the SCA and is not governed by the either of these statutory schemes.
3. OHFA, as a state beneficiary public trust formed under title 60, sections 176--180 of the Oklahoma Statutes, is an agent of its principal/beneficiary the State and exists outside of the executive branch of state government. Therefore, OHFA does not fall within the definition of "state agency" or "agency" in the SFA and is not governed by the SFA.

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
BENJAMIN H. GRAVES
ASSISTANT ATTORNEY GENERAL
FOOTNOTES
[1] Immaterial to the analysis herein, this office notes that the Oklahoma Supreme Court has determined title 60, section 180.4 (1973) is a special law, contravening article 5, section 59 of the Oklahoma Constitution, and is therefore unconstitutional. Oklahoma Cnty. Util. Servs. Auth. v. Corporation Comm'n, 1974 OK 22, 519 P.2d 919.

[2] [O]nly the public trustees themselves are 'an agency of the State' . . . . All of the provisions of 60 O.S. 179 deal with limiting the liability of public trustees and limiting their personal liability . . . . The fact that these trustees are public officers charged with the important duty of administering trust property for the benefit of their beneficiaries does not make the funds of the trust 'public funds' . . . .

1986 OK AG 131, ¶ 12 (citation omitted).
[3] Save for the exclusions for the State Regents for Higher Education and the Commissioners of Land Office, the SCA's definition of "state agency" is identical to the definition of this term in the CPA. Accordingly, the analysis and determination regarding the CPA also resolves your question regarding the SCA.
[4] Compare 25 O.S.2021, § 304(1) ("'Public body' means . . . public trusts or any entity created by a public trust[.]) and 75 O.S.2021, § 250.5 ("[T]his act shall apply to public trusts having the state, or any department or agency thereof, as beneficiary.")
[5] See also 60 O.S.2021, § 178, providing in part that: "[T]rustees, who are public officers, shall serve without compensation . . .." It is likely that the provisions of title 60, section 178 also answer the question. However, at least in one instance, this language has been interpreted not to be a declaration of the status of trustees but rather that the Legislature contemplated public officers concurrently serving as a trustee of a public trust. Halstead v. McHendry, 1977 OK 131, ¶ 18, 566 P.2d 134, 138.
[6] Similarly, this office does not interpret the recent enactment of the Oklahoma Housing Stability Program, title 74, sections 2903--2903.5, exempting the OHFA from the CPA, State Finance Act and Public Competitive Bidding Act to inversely mean that other OHFA operations and programs must comply with the CPA. If the Legislature did in fact intend for public trusts to be included in the CPA's definition of "state agency," then the Legislature must more definitively express its intent by expressly including public trusts expressly in the definition. Rodgers v. Higgins, 1993 OK 45, ¶ 19, 871 P.2d 398, 409 ("We should not read into the law that which is not there.); Okla. Const. art. V, § 36; Kentucky Fried Chicken of McAlester v. Snell, 2014 OK 35, 345 P.3d 351.
[7] This definition is nearly identical to the CPA's definition; however, here the SFA's definition does not include the word "officer."

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2017 OK AG 4, 
Question Submitted by: Richard Lillard, Chairman, Oklahoma Housing Finance Agency
Cited

 
1984 OK AG 135, 
Question Submitted by: The Honorable George Nigh, Governor of the State of Oklahoma
Discussed at Length

 
1986 OK AG 131, 
Question Submitted by: The Honorable Stratton Taylor, Oklahoma State Senate
Cited

 
1996 OK AG 47, 
Question Submitted by: David M. Thornton, Chairman, Board of Trustees, Oklahoma Housing Finance Authority
Cited

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1977 OK CIV APP 27, 581 P.2d 482, 
McKOSKY v. TOWN OF TALIHINA
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1993 OK 45, 871 P.2d 398, 64 OBJ 1255, 
Rodgers v. Higgins
Discussed

 
1993 OK 101, 857 P.2d 53, 64 OBJ 2328, 
Indiana Nat. Bank v. State Dept. of Human Services
Discussed

 
1895 OK 71, 41 P. 635, 3 Okla. 677, 
Guthrie Daily Leader v. Cameron
Discussed at Length

 
1936 OK 589, 62 P.2d 94, 178 Okla. 212, 
OKLAHOMA CITY v. CENTURY INDEM. CO.
Discussed

 
1959 OK 260, 348 P.2d 859, 
STATE v. GARRISON
Discussed

 
1970 OK 118, 470 P.2d 572, 
APPLICATION OF SOUTHERN OKLAHOMA DEVELOP. TRUST
Discussed

 
1974 OK 22, 519 P.2d 919, 
OKLAHOMA CTY. UTIL. SERV. AUTH. v. CORP. COM'N
Discussed

 
2005 OK 15, 109 P.3d 336, 
IN THE MATTER OF J.L.M.
Discussed

 
2005 OK 27, 130 P.3d 213, 
YOCUM v. GREENBRIAR NURSING HOME
Discussed

 
2006 OK 32, 136 P.3d 656, 
YDF, INC. v. SCHLUMAR, INC.
Discussed

 
2007 OK 21, 158 P.3d 461, 
OKLAHOMA CITY ZOOLOGICAL TRUST v. STATE ex rel. PUBLIC EMPLOYEES RELATIONS BD.
Discussed

 
1976 OK 73, 551 P.2d 252, 
SHOTTS v. HUGH
Discussed at Length

 
2014 OK 35, 345 P.3d 351, 
KENTUCKY FRIED CHICKEN OF McALESTER v. SNELL
Discussed

 
1977 OK 131, 566 P.2d 134, 
HALSTEAD v. McHENDRY
Discussed

 
2019 OK 6, 441 P.3d 1094, 
MCINTOSH v. WATKINS
Discussed at Length

 
1981 OK 47, 629 P.2d 1244, 
State ex rel. Cartwright v. Oklahoma Industries Authority
Discussed

Title 22. Criminal Procedure

 
Cite
Name
Level

 
22 O.S. 1181, 
Removal of Officers from Office
Cited

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 304, 
Definitions
Cited

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 51, 
Impeachment - Crimes - Subject of
Cited

Title 60. Property

 
Cite
Name
Level

 
60 O.S. 176, 
Trusts for Benefit of State, County or Municipality - Approval - Expenditures - Bylaws - Amendments - Indebtedness - Bonds - Contracts
Discussed at Length

 
60 O.S. 176.1, 
Presumptions of Public Trust - Required Conditions
Discussed at Length

 
60 O.S. 178, 
Trustees
Discussed at Length

Title 62. Public Finance

 
Cite
Name
Level

 
62 O.S. 34.11, 
Duties and Functions of Division of Central Accounting and Reporting
Discussed

 
62 O.S. 34.3, 
Office of Management and Enterprise Services - "Agency," "State Agency," and "Authorization" Defined
Cited

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 85.2, 
Definitions
Cited

Title 75. Statutes and Reports

 
Cite
Name
Level

 
75 O.S. 250.5, 
Act Not to Apply to Certain Governments, Authorities, etc.
Cited