STATE of Oklahoma ex rel. Mac Q. WIL-
LIAMSON, Attorney General of said
State, Plaintiff in Error,

v.

Harrell E. GARRISON et al., Trustees of the
Northeast Okla. Gas Authority, The City
of Tahlequah and The Town of Fort Gib-
son, Defendants in Error.

No. 38695.

Supreme Court of Oklahoma.

Dec. 16, 1959.

Rehearing Denied Jan. 18, 1960.

Mac Q. Williamson, Atty. Gen., of Oklahoma, James C. Harkin, Asst. Atty. Gen., for plaintiff in error.

Thomas L. Gibson, Muskogee, Don Welch, Jr., Edwin W. Dudley, Joseph O. Minter, Madill, for J. R. Malloy, Jr., and J. A. McSpadden, plaintiffs below.

Leon S. Hirsh, Oklahoma City, Miller & Miller, Tahlequah, for defendants in error.

Barney & Pain, Anadarko, amici curiae.

PER CURIAM.

On October 22, 1958, defendants in error, Dr. Harrell E. Garrison, N. N. Duncan, Leon R. Daniel, James M. Hicks and A. L. Dickerson, Jr., hereafter referred to as "Trustees", executed an instrument denominated "Declaration of Trust", hereafter referred to as "Indenture". The purpose of said indenture was to create a trust to be known as the Northeast Oklahoma Gas Authority, hereafter referred to as "Trust", with the right, power and privilege under "The Laws of the State of Oklahoma (generally but not exclusively pursuant to Title 60, Sections 176 to 180, inclusive, Oklahoma Statutes, 1951, as amended, and to the Oklahoma Trust Act)" to construct, maintain and operate a gas utility in "that portion of the State of Oklahoma lying north of the Arkansas River and east of the Grand River and in reasonable proximity thereto." The referred-to territory, hereafter referred to as "Area", embraces approximately 2,750,000 acres.

It was provided in the indenture that the "Initial beneficiary hereunder shall be the State of Oklahoma" (Northeastern State College is the only state agency that has become a beneficiary); that any municipal corporation located within the area heretofore referred to, may become a beneficiary; that the beneficiary hereunder shall be the governmental entity or entities whose authorized functions will be performed by the trust; "that the Beneficiary shall have no legal title, claim or right to the Trust Estate, or be any part thereof; neither shall the Beneficiary, as such, have any authority, power or right whatsoever to do or transact any business whatsoever for, or on behalf of, or binding upon the Trustees or any of them or upon the Trust Estate; neither shall the Beneficiary have the right to control or direct the actions of the Trustees or any of them in respect of the Trust Estate, or any part thereof; nor shall the Beneficiary have any right to demand or require any partition or distribution of the Trust Estate, or any part thereof. The Beneficiary shall be entitled solely to the benefits of this Trust, as administered by the Trustees hereunder, and at the termination of the Trust, as provided herein and then only, the Beneficiary shall receive the residue of the Trust Estate." Provision was made for the governing bodies of municipalities to "accept beneficial interest" under the indenture as by law provided.

As we read the Indenture, provision is in fact made for any number of beneficiaries which could include several cities or towns. The Trustees are required to exercise and perform certain of the functions of each beneficiary. This would result in the Trustees performing, in the same general operation, the duties of the city beneficiaries, the town beneficiaries and the state beneficiaries; although it would seem apparent that in some instances the duties and interests of the various beneficiaries might be in conflict and incompatible.

Dr. Garrison stated in a letter that was introduced in evidence that "The Trust will operate virtually in perpetuity" and it is apparent that the parties contemplate that the trust will in fact operate in perpetuity.

The trust estate consists of money and property coming into the hands of the trustees. It appear that money to finance the planned gas utility will be raised through issuing bonds.

The trustees shall be residents of the area in which the trust proposes to do business. The trustees named in the indenture are either city officials or officials of Northeastern State College. The trustees are granted all powers necessarily incident to constructing, maintaining and operating a gas utility in the area.

Net operating income of the trust is allocable to those who become beneficiaries of the trust.

On November 18, 1958, the City of Tahlequah which lies within the area, by resolution of its mayor and council, accepted a beneficial interest in the trust. On December 5, 1959, the Town of Fort Gibson, which also lies within the area, by resolution of its governing body also accepted a beneficial interest in the trust.

The Governor of this State, as by statute provided, accepted for the State a beneficial interest in the trust.

We digress in order to point out that the trust is a legal entity separate and apart from the State and the political subdivisions of the State and as such (assuming that it qualifies as a public trust) an "agency of the State and the regularly constituted authority * * * for the performance of the functions for which the trust shall have been created." 60 O.S.1951 § 179. Therefore, in the instant case an agency of the towns and cities which have or which may become beneficiaries of the trust and of Northeastern State College.

In Dr. Garrison's letter heretofore referred to he stated that private capital had failed to furnish gas to said area (we assume a portion thereof), which fact had retarded industrial development of the area; that if a utility were relieved of all State and Federal taxes it could operate a gas utility in the area at a profit and that since the trust will be exempt from such taxes it can operate in the area at a profit.

The indenture does not limit the sale of gas by Trust to entities within the corporate limits of towns and cities within the area. Since one of the objects of the trust is to promote industrialization of the area we assume, and in fact the parties appear to agree, that the trust is empowered to sell and deliver gas to entities both within and without the corporate limits of the municipalities that become beneficiaries.

The parties appear to be in agreement on the proposition that the trust's position is that it is empowered to build, maintain and operate a gas utility in any town or city becoming a beneficiary of the trust without a franchise and that no beneficiary shall exact any compensation from trust in the trust building, maintaining and operating a gas utility therein. The parties also appear to agree on the proposition that towns and cities in which trust operates will be without right or authority to fix the rates charged by trust or otherwise regulate it and that no agency of the State at present has the right or authority to fix the rates charged by trust or otherwise regulate it.

This case was instituted by individuals who sought injunctive relief against the trust. Upon the Governor directing the Attorney General to appear in the case for the purpose of testing the validity of the trust, the Attorney General, after first obtaining permission of the trial court to appear, took the lead in the case. We are of the opinion that the Attorney General and the original plaintiffs unsuccessfully presented in the trial court every issue that bears upon the validity of the trust and that they and amicus curiae, on appeal by Attorney General from an adverse judgment in the lower court, have done so here. For reasons hereinafter made apparent it is only necessary for us to discuss a few of the many contentions presented by those opposing the trust.

It is contended that the indenture violates the provisions of Art. XVIII, Sec. 7 of the Oklahoma Constitution to this effect:

"Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted."

Note that two things are prohibited by the quoted provision. First, the surrendering of the power to regulate the charges for public services and second, the granting of exclusive franchises.

In countering said contention the trust asserts that "The fallacy of that contention lies in the fact that the instant trust, as an agency of the State requires no franchise from any municipal subdivision of the State"; that franchises are only granted

when private companies exploit for private profit, and since the trust is not a private company and there will be no profit the quoted constitutional provision is not brought into play; and that "it would be incongruous for a city to grant itself a franchise" to operate a utility. As we read the last quoted statement, the trust contends that each beneficiary in fact owns and operates the gas-distributing system within its corporate limits. Trust cannot be "fish" for the purpose of enjoying the rights, privileges and immunities of cities as political subdivisions of the State and "fowl" for the purpose of escaping constitutional restrictions placed upon cities. Trust does not discuss the language of the quoted provision to the effect that "the charges for public services" shall not be surrendered and does not contend that the services it proposed to render will not be "public services" or that it will not charge for same.

We again wish to point out that trust is a separate legal entity from those that become beneficiaries under the trust, and as a separate legal entity trust proposes to build, maintain and operate the gas utility wherever built, maintained and operated. The fact that trusts formed under the statute heretofore referred to are "agencies of the State" or of one of its political subdivisions does not serve to blend them with towns and cities that become beneficiaries. In fact, trust cannot seriously contend otherwise in face of its argument that since it is not a city or town the constitutional inhibitions that prevent cities and towns from raising capital in the manner that trust proposes to employ do not apply to it.

Trust cites McQuillin, "Municipal Corporations", 3rd Edition, Vol. 12, Sec. 34.01, to the effect that "Franchises have been regarded as special privileges granted by government to particular individuals or companies to be exploited for private profits", and concludes that since (according to it) the indenture "eliminates any element or possibility of any private gain whatsoever" the rights and privileges granted trust by beneficiaries cannot be classified as franchises within the meaning of Art. XVIII, Secs. 5(a) and 7 of the Constitution. The above quoted language from McQuillin's work on "Municipal Corporations" appears in the first paragraph of a topic entitled "Franchises". The paragraph is headed "Introductory". The quoted matter is in fact a quote from Wilcox, "Municipal Franchises", Vol. 1, Sec. 1, and not from a court decision. Mr. McQuillin has this to say further on in the volume above referred to:

"In American Law, a franchise is defined as a special privilege conferred by the government on individuals or corporations and which does not belong to the citizens of a country generally by common right, and it is immaterial whether the grant is made direct by the legislature or by a municipality to whom the power is delegated. It need not be granted to a corporation but may be granted to private persons. * * *" (Sec. 34.03, p. 11, et seq.).

"The word 'franchises' has various significations, both in a legal and popular sense. The relation in which the term is employed controls its meaning. Speaking generally, a franchise is a special privilege of a public nature conferred by governmental authority upon individuals as such, or artificial personalities usually called corporations, and which privilege did not belong to individuals generally as a matter of common right. It is a generic term embracing all rights granted to corporations by the legislature of the State, * * *." (Sec. 34.04, pp. 16, 17)

At pages 714, 715, Sec. 2, 23 Am.Jur. "Franchises", this will be found:

"The word 'franchise' is generally used to designate a right or privilege conferred by law. Many attempts have been made to define it, and there is not a little variation in the terms used. The truth is that the term has various significations both in legal and in popular parlance. * * * The right, whether existing in a natural or an artificial person, to carry on any particular business is not necessarily or

usually a franchise. It is the privilege of doing that 'which does not belong to the citizens of the country generally by common right' that constitutes the distinguishing feature of a franchise. * * * "

■ In the 8th paragraph of the syllabus to Oklahoma Gas & Electric Co. v. Wilson & Co., Inc., 146 Okl. 272, 288 P. 316, 317, we said:

"The word 'franchise' is generally used to designate a right or privilege conferred by law. * * * It is the privilege of doing that which does not belong to the citizens of the country generally by common right."

■ The Trust will render "public services" and will operate for profit. The fact that net profit from its operations will be passed on to an agency of the State or a political subdivision of the State, does not, in our opinion, tend to establish that a city or a town which accepts beneficial interests in the Trust is not by said action granting a franchise to Trust.

■■ In any event we are of the conviction that the object and purpose of the last paragraph of Art. XVIII, Sec. 7, quoted supra, is to prohibit the surrender of "the power to regulate the charges for public services", irrespective of whether the power is surrendered by granting a privilege that is generally referred to as a franchise or by accepting the provisions of a trust indenture that grants said privilege as was attempted in the instant case. We are also of the opinion that in using the word "franchise" in the referred-to paragraph, the framers of the Constitution and the people intended that the word embrace the exercise of privileges that do not belong generally to citizens and, therefore, intended that the word embrace the privilege of doing a utility business irrespective of whether the net income from the business is distributed to stockholders or to political subdivisions of the State. In view of the fact that the trust may operate in perpetuity and the further fact that the beneficiaries are attempting to surrender their power to regulate the charges made

by trust for its services, the beneficiaries are in fact clearly attempting to grant an exclusive franchise in violation of Art. XVIII, Sec. 7 of the Constitution.

It is also contended that if the statutes under which trust contends it was created are construed as contended for by trust, Art. XVIII, Sec. 5(a) to the following effect is impinged upon:

"No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within the corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, extended, or renewed for a longer term than twenty-five years."

In City of Okmulgee v. Okmulgee Gas Co. (Oklahoma Natural Gas Corporation, substituted), 140 Okl. 88, 282 P. 640, 645, this was said about the last above quoted constitutional provision:

"From the historical events and conditions existing about the time the framers of the Constitution assembled and prepared and submitted to the people for their ratification the Constitution, they had in mind the reservation of power in our Constitution by the people to themselves. They also had in mind that the surest way of securing franchises satisfactory to the people was for the people to vote such franchises, so they provided by section 5(a) of article 18, supra, that:" (Art. XVIII, Sec. 5(a) is then quoted).

Further on in the opinion this was said:

"Then, to prevent any exclusive franchise or privilege ever being granted in this state, the framers incorporated in the Constitution section 51 of article 5, which reads: 'The Legislature shall pass no law granting to any association, corporation, or indi-

**865**

vidual any exclusive rights, privileges, or immunities within this State.' "

■ The matter of whether the Legislature can take from the electors of towns and cities rights granted by our Constitution is tersely answered in the Okmulgee case, supra, in these words:

"This right and power being given the qualified electors of a municipal corporation, by the Constitution, it cannot be taken away by the Legislature."

See also City of Hugo v. Oklahoma Power Co., 141 Okl. 100, 284 P. 12, which bears on the issue under discussion.

In alluding to the above cited cases we are not implying that the Legislature in enacting the statutes permitting the creation of public trusts, such as trust claims to be, attempted to impinge upon the Constitution. To the contrary, our purpose in alluding to said cases is to point out that if the Legislature had in fact sought to do so the legislation must fall because when legislation collides with the Constitution it is fatal to the legislation.

■ It is clear in the instant case that the governing body of Tahlequah and of Fort Gibson have undertaken to grant a franchise "for a longer term than twenty-five years" to trust "without the approval of a majority of (their) qualified electors", in violation of Art. XVIII, Sec. 5(a), supra.

The judgment of the trial court is reversed and said court is directed to enter judgment against trust in keeping with this opinion.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, JACKSON, IRWIN and BERRY, JJ. concur.

BLACKBIRD, J., concurs in the result.

HALLEY and JOHNSON, JJ. dissent.

### On Petitions for Rehearing.

On considering petitions for rehearing, on account of the presentations made by the parties and by those appearing as amici curiae, we think we should repeat for emphasis, that the rules here adopted and the statements made in our opinion and decision all specifically apply and are meant to apply to this so-called trust on account of the character of its formation and composition as set out in the majority opinion.

This trust is quite extensive in area, in number of different beneficiaries, and in the possibility of numerous additional beneficiaries with possible conflicts and incompatibilities in plans and purposes. It is the first such trust this court has considered, and is a case of first impression. It is quite different from the single beneficiary trusts considered by us in former cases. Any consideration of cases involving trusts with a single beneficiary is not necessary to a decision of the issues herein involved.

As to the character of trust here attempted to be set up, and restricting our decision thereto, we adhere to our decision adverse to such trust, and deny all petitions for rehearing.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON and BLACKBIRD, JJ., concur.

JACKSON, IRWIN and BERRY, JJ., dissent.