982 P.2d 512 (1999)
1999 OK 35
OKLAHOMA ELECTRIC COOPERATIVE, INC., Appellant,
v.
OKLAHOMA GAS AND ELECTRIC COMPANY, Appellee.
No. 90,985.
Supreme Court of Oklahoma.
April 27, 1999.
As Corrected May 5, 1999.
Philip D. Hart, McAfee & Taft, P.C., Oklahoma City, Oklahoma, H.L. Heiple, Heiple Law Offices, Inc., Norman, Oklahoma, for Appellant.
Hugh D. Rice, Rainey, Ross, Rice & Binns, Oklahoma City, Oklahoma, Diane Goldschmidt, Oklahoma Gas and Electric Company, Oklahoma City, Oklahoma, for Appellee.
*513 HODGES, J.

I. ISSUE
¶ 1 The issue in this case is whether a public electric utility company which is using city streets to sell and distribute utility services to city residents must obtain a voter-approved franchise.[1] Because voter approval is required by article 18, section 5(a) of the Oklahoma Constitution and this requirement cannot be overridden by the Legislature, we answer in the affirmative.

*514 II. FACTS
¶ 2 The parties, Oklahoma Electric Cooperative (OEC) and Oklahoma Gas and Electric Company (OG&E) stipulated to the facts. In 1937, the McClain County Commissioners granted OEC's predecessor permission to use the public ways to install lines and distribute electricity to residents of McClain County. In 1962, the City of Newcastle (Newcastle) annexed into its city limits areas that were being served by OEC. Shortly after this annexation and by voter approval, Newcastle granted OEC a 25-year franchise to utilize the city streets to sell and distribute electricity within Newcastle's limits. The expiration date of this franchise was June 2, 1988.
¶ 3 Before OEC's franchise expired, Newcastle approved Ordinance Number 251, adopting a two percent gross receipts tax in lieu of a franchise tax. The ordinance levies a tax upon the gross receipts from the sale of power, heat, electricity, and gas but does not apply to associations and corporations operating under a valid franchise. Newcastle's attorney informed OEC that OEC could opt to pay the two percent gross receipts tax rather than renew the city franchise. OEC's franchise expired, and OEC has been paying the gross receipts tax.
¶ 4 In January 1993, the City of Oklahoma City de-annexed and Newcastle simultaneously annexed an area in which OG&E had constructed and maintained electric facilities on public streets. At the time of the annexation, OG&E was serving twelve customers within the annexed area.
¶ 5 In December 1994, OG&E, utilizing Newcastle public ways and pursuant to "utility permits" issued by the Newcastle City Council, extended its lines to provide electricity to four new customers outside the annexed area but within Newcastle city limits. OG&E has never obtained a voter-approved franchise from Newcastle but has been acting with the approval of the Newcastle City Council.
¶ 6 OEC filed a petition in the district court seeking to enjoin OG&E's expansion. Based on the stipulated facts, the trial court found that OG&E was not required to obtain a voter-approved franchise to expand its services within Newcastle's city limits. The trial court denied OEC's request for an injunction. OEC appealed, and this Court retained the matter for disposition.

III. DISCUSSION
¶ 7 "The Constitution [is] the bulwark to which all statutes must yield." Draper v. State, 1980 OK 117, ¶ 8, 621 P.2d 1142. In construing and applying constitutional provisions, the intent of the framers and the people adopting it must be given effect. Id. Absent an ambiguity, the intent is settled by the language of the provision itself; and courts are not at liberty to search beyond the instrument for meaning. Id.
¶ 8 Article 18, section 5(a) of the Oklahoma Constitution provides: "(n)o municipal corporation shall ever grant, extend or renew a franchise without the approval of a majority of the qualified electors residing within its corporate limits who shall vote thereon at a general or special election." The purpose of Section 5(a) is to give the electorate of a municipality absolute control over the granting of franchises. Article 18, section 5(a) is clear and unambiguous.
¶ 9 Article 18, Section 5(a) uses the term "shall" in requiring voter approval of municipal franchises. Generally, the term "shall" is mandatory and precludes alternative means of carrying out a mandate. Minie v. Hudson, 1997 OK 26, ¶ 6 n. 13, 934 P.2d 1082, 1085 n. 13. "[W]here the Constitution confers the power to do a particular act and prescribes the means and manner of doing such act, such means or manner is exclusive of all others. . . ." Draper v. State, 1980 OK 117, ¶ 10, 621 P.2d 1142, 1146 (1980) (quoting City of Sapulpa v. Land, 1924 OK ____, 101 Okla. 22, 223 P. 640. Article 18, section 5(a), prescribes the means by which a franchise may be granted. Newcastle must follow the constitutionally-mandated procedure in granting OG&E a franchise to extend its geographical area of operation.
¶ 10 Newcastle's City Council has granted OG&E a franchise in violation of article 18, section 5(a). Although not defined in the Oklahoma Constitution, this Court has *515 adopted the well recognized definition of franchise by stating:
"The word `franchise' is generally used to designate a right or privilege conferred by law. To be a `franchise' the right possessed must be such as cannot be exercised without the express permission of the sovereign power. It is the privilege of doing that which does not belong to the citizens of the country generally by common right."
Oklahoma Gas and Electric Co. v. Total Energy, 1972 OK 108, ¶ 24, 499 P.2d 917, 921 (quoting Oklahoma Gas & Electric Co. v. Wilson & Co., 1930 OK ___, 146 Okla. 272, 288 P. 316). Quoting McQuillin, Municipal Corporations § 34.04 (3rd ed.), this Court explained:
"The right to conduct a business of a public utility and use of the streets and public ways for this purpose . . . is required to be conferred by public authority, and this constitutes the giving of a franchise. . . . [T]he term franchise . . . means the right granted by the state or a municipality to an existing corporation or individual to do certain things which a corporation or individual otherwise cannot do, such as the right to use the street . . . to erect thereon poles and wires . . . for electric light purposes."
(Emphasis added.) In State ex rel. Mac Q. Williamson v. Garrison, 1959 OK 260, ¶ 23, 348 P.2d 859, 864, this Court opined:
[I]n using the word "franchise" . . . the framers of the Constitution and the people intended that the word embrace the exercise of privileges that do not belong generally to citizens and, therefore, intended that the word embrace the privilege of doing a utility business. . . .
¶ 11 This Court has consistently held that a franchise is required when public streets or other public ways are used by a public utility for the purpose of generating, distributing, and selling electricity. Bartlesville Electric Light and Power Co. v. Bartlesville Interurban Ry. Co., 1910 OK ___, 26 Okla. 453, 109 P. 228; Garrison, 1959 OK 260, ¶ 30, 348 P.2d at 865; Oklahoma Gas and Electric Co. v. Total Energy, 1972 OK 108, ¶ 33, 499 P.2d 917, 924. In the present case, Newcastle's City Council granted OG&E the right to use the public ways for distributing and selling electricity, a franchise, without approval of Newcastle's electorate in disregard of article 18, section 5(a) of the Oklahoma Constitution. See Bartlesville Electric Light and Power Co. v. Bartlesville Interurban Ry. Co., 1910 OK ___, 26 Okla. 453, 109 P. 228; Garrison, 1959 OK 260, ¶ 30, 348 P.2d at 865; Oklahoma Gas and Electric Co. v. Total Energy, 1972 OK 108, ¶ 33, 499 P.2d 917, 924.
¶ 12 OG&E attempts to avoid the necessity of voter approval for its actions by denoting its grant as a license rather than a franchise. The United States Court of Appeals for the Eighth Circuit distinguished a franchise from a license as follows:
"A franchise is a right or privilege granted by the sovereignty to one or more parties to do some act or acts which they could not perform without this grant from the sovereign power. . . .
It is not, however, every privilege or permission granted by state or city to occupy or to use public rivers, highways, or streets that rises to the dignity of a franchise. A privilege granted by a city to a private party to occupy or use a portion of a public street temporarily for the construction of a building upon an abutting lot, for a cab stand, an apple stand, or for any similar commercial purpose is a license and not a franchise. The exact line of demarcation between franchises and licenses may not be clearly drawn, but their general characters and limits are so well known and so clearly established that it is not difficult to assign many rights granted to the class to which they belong.
A right or privilege which is essential to the performance of the general function or purpose of the grantee, and which is and can be granted by the sovereignty alone, such as the right or privilege of a corporation to operate an ordinary or commercial railroad, a street railroad, city waterworks or gasworks, and to collect tolls therefor, is a franchise. . . .
A right or privilege not essential to the general function or purpose of the grantee, and of such a nature that a private party might grant a like right or privilege upon his property, such as a temporary or revocable *516 permission to occupy or use a portion of some public ground, highway, or street, is a license and not a franchise.
McPhee & McGinnity Co. v. Union Pacific Railroad Co., 158 F. 5, 10 (8th Cir.1907); Community Tele-Communications, Inc. v. Heather Corp., 677 P.2d 330, 336-37 (Colo. 1984).
¶ 13 OG&E is a public utility to which the privilege to construct and maintain lines for the purpose of selling and distributing electricity has been granted by the City Council of Newcastle. This right is indispensable to the function and purpose of OG&E. No one but the electorate of Newcastle at an election could grant the privilege, and there is no doubt it is a franchise. McPhee, 158 F. at 10; Community Tele-Communications, 677 P.2d at 337.
¶ 14 OG&E relies on sections 22-107[2] and 36-101 of title 11,[3] and section 1401 of title 69[4] of the Oklahoma Statutes in support of its position. "Legislatures must function within constitutional limitations, and it is presumed that a legislature acts with a conscious regard thereof." State ex rel. Kerr v. Grand River Dam Auth., 1945 OK ___, 195 Okla. 8, 154 P.2d 946, 951. Thus, the statutes relied on by OG&E must be construed and applied subject to the constitutional provision requiring voter-approval for municipal franchises. See In re Protest Against the Tax Levy of Ardmore Independent School No. 19 for Fiscal Year 1997-1998, 1998 OK 43, ¶ 11, 959 P.2d 580, 583.
¶ 15 Section 22-107 of title 11 gives municipalities the authority to regulate municipal license; it does not address franchises. Section 22-107 provides for the expiration of a license "no later than one (1) year after the date of its issuance or on June 30 of each year." Section 22-107 does not address the use of public ways by public utilities and does not support OG&E's position.
¶ 16 Section 36-101 of title 11 grants a municipal governing body the authority to "[r]egulate and control the use of streets, roads and other public ways" in the manner provided by law. The use of public ways by utilities is regulated by article 18, section 5(a) of the Oklahoma Constitution which requires voter-approval for municipal franchises. Section 36-101 does not authorize a city council to allow a public utility to use public ways without first obtaining a voter-approved franchise as required by section 5(a) of article 18 of the Oklahoma Constitution.
¶ 17 Section 1401 of title 69 gives public utilities and cable television companies the right to use highways to erect poles and to lay pipe and conduits subject to the rules and regulations of the State Highway Commission and the boards of county commissioners. Section 1401 reaffirms a municipality's *517 right to grant franchises to public utilities, but the franchise must be granted by a majority vote of the qualified electorate residing within the city limits. As with the other statutory provisions relied on by OG&E, section 1401 does not authorize Newcastle to grant a franchise without approval of the voters. None of the statutory provisions on which OG&E relies authorizes Newcastle's City Council to circumvent the requirements of section 5 of article 18 of the Oklahoma Constitution by enacting an ordinance or approving utility permits.
¶ 18 OG&E seeks to obtain a superior status to electric cooperatives. By enacting section 437.2 of title 18, the Oklahoma Legislature has given electric cooperatives the right to construct, maintain, and operate transmission and distribution lines on public thoroughfares in areas which are not within the boundaries of a city. This right is subject to approval of the county commissioners in which the lines are to be constructed. With the approval of the county commissioners, "a contract in the nature of a franchise [comes] into being." Resh, Inc. v. Oklahoma Electric Cooperative, Inc., 1973 OK 81, ¶ 23, 516 P.2d 803, 809. The rights granted by the state and by the county commissions generally allow an electric cooperative to expand its services within the area in which it operated before the annexation by grant of county authority. Okla. Stat. tit. 18, § 437.2(k) (1991); Resh, 1973 OK 81, ¶ 38, 516 P.2d at 813. Neither the Oklahoma Legislature nor this Court has declared that an electric cooperative has the right to extend its services, after annexation, to an area in which it never had a grant of authority to operate.
¶ 19 In Resh, Inc. v. Oklahoma Electric Cooperative, 1973 OK 81, 516 P.2d 803, this Court held that a rural electric cooperative could expand its services in a municipally-annexed area in which the cooperative had county authority to operate before the annexation. This decision is consistent with this Court's jurisprudence regarding divestment of vested rights. In Resh, the cooperative was not attempting to expand into an area in which it did not previously have county-vested authority to operate but was attempting only to expand its services in an area that the county had previously granted it authority to operate.
¶ 20 What OG&E seeks to do here is expand beyond the area for which it had previously held a franchise into an area for which it has never held a franchise, either from the City of Oklahoma City or the City of Newcastle. Cooperatives have not been given authority, either legislative or judicial, to expand within a municipality beyond an annexed area without voter approval. Thus, to require public utilities to obtain voter approval before expanding beyond an annexed area does not raise an equal protection issue.
¶ 21 The intent of the framers in enacting article 18, section 5(a) was to address the problem of municipalities which, "ill advisedly grant away valuable franchises, shackling and burdening future generations." Oklahoma City v. Shields, 1908 OK ___, 22 Okla. 265, 100 P. 559, 572. The framers chose to address municipality abuses by bestowing the electorate with the power to decide whether a franchise should be granted. The clear intent was to reserve the authority to grant franchises to the voters.
¶ 22 OG&E relies on public policy favoring competition and customer choice, as expressed in section 7 of article 18 of the Oklahoma Constitution[5] and the Electric Restructuring Act of 1997, Okla. Stat. tit. 17, §§ 189-190.7 (Supp.1997),[6] in support of its *518 argument to allow the City Council to permit OG&E to expand its service within Newcastle. Just as a statutory provision cannot overrule a clear and unambiguous constitutional requirement, neither can a legislative statement of public policy. Because no exclusive franchise can be granted, the qualified electorate of Newcastle may grant as many competitive franchises as they deem necessary, including a franchise to OG&E. Okla. Const. art. 18, § 7; Total Energy, 1972 OK 108, ¶ 45, 499 P.2d at 924. Thus, the policy of promoting competition and customer choice is not endangered by requiring the City Council to comply with article 18, section 5(a). OG&E is prevented from expanding within the boundaries of Newcastle only until it secures a franchise which complies with constitutional and legislative mandates.
¶ 23 The fact that OG&E is already operating in Newcastle is not conclusive evidence of its right to expand its service because article 18, section 5(a) prohibits the municipality from expanding a franchise without a vote of the electorate. Newcastle City Council cannot expand OG&E's right to provide service simply because Newcastle annexed an area containing a few OG&E customers. The City Council may not grant a franchise indirectly by enacting an ordinance allowing it to collect a gross receipts tax in lieu of a franchise tax and granting utility permits when only the qualified electorate may grant a franchise. Okla. Const. art. 18, § 7; Total Energy, 1972 OK 108, ¶ 45, 499 P.2d at 924. To the extent that Newcastle Ordinance 251 authorizes OG&E to use the public ways of Newcastle to expand its current service within the boundaries of Newcastle without a vote of Newcastle's electorate, it violates section 5(a) of article 18 of the Oklahoma Constitution and is unlawful.

IV. CONCLUSION
¶ 24 The trial court erred in concluding that OG&E had the right to use Newcastle's public ways to expand its electric facilities without a voter-approved franchise. OG&E should have been enjoined from using the public ways to expand its service until it obtained a voter-approved franchise in conformance with Section 5(a) of Article 18 of the Oklahoma Constitution. The judgment of the trial court is reversed, and the case remanded with instructions to enter judgment consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.
¶ 25 HARGRAVE, V.C.J., HODGES, LAVENDER, WILSON, JJ., STRUBHAR, S.J., (sitting in lieu of KAUGER, J., who recused), concur.
¶ 26 SUMMERS, C.J., SIMMS, OPALA, WATT, JJ., dissent.
WATT, J., with whom SIMMS, J., joins dissenting.
¶ 1 The majority opinion turns the policy of the law on its head. The clear purpose of Oklahoma Constitution Art. 18 § 5(a) is to prohibit municipalities from granting non-competitive franchises without first obtaining the permission of the voters. The majority opinion instead uses § 5(a) to eliminate competition by securing a monopoly for OEC despite the wishes of the Newcastle City Council that OG&E be allowed to compete with OEC.
¶ 2 For some time both OEC and OG&E have happily operated without franchises under the licensing arrangement set up by Newcastle. The only reason this litigation arose is that OEC claims an exemption from obtaining a franchise under 18 O.S.1991 § 437.2(k).[1] Section 437.2(k) grants the power *519 to electric cooperatives who are brought into municipalities to "to continue and extend the furnishing of electric energy or the construction and operation of electric facilities in such area without obtaining the consent, franchise, license, permit or other authority" of the municipality. OEC, therefore, claims that while the statute exempts it from the obligation to obtain a franchise, OG&E is, nevertheless, obliged to do so.
¶ 3 The majority's holding that a franchise election is mandated under the Oklahoma constitution even when the utility involved is already doing business within the corporate limits makes inescapable the conclusion that 18 O.S. § 437.2(k) is unconstitutional. The majority opinion states that Article 10 § 5(a) Okla. Const. "cannot be overridden by the Legislature . . .," 1998 OK 118 at ¶ 1, 971 P.2d 868 and that "The constitution is the Bulwark to which all statutes must yield," 1998 OK 118 at ¶ 8, 971 P.2d 868. [Emphasis added.] But the effect of 18 O.S. § 437.2(k) is to relieve electric cooperatives of their clear obligation under Article 10 § 5(a) of the constitution to obtain a franchise.
¶ 4 With very narrow exceptions not applicable here, the legislature has no power to waive constitutional requirements through legislation. State v. Oklahoma Corporation Commission, 1998 OK 118 ¶ 2, 971 P.2d 868. Thus, under the majority opinion, OG&E is now entitled to seek an injunction against OEC to prohibit OEC from extending its service until and unless OEC obtains a franchise on the ground that 18 O.S. § 437.2(k) is unconstitutional and OEC is, therefore, unlawfully operating within Newcastle.
¶ 5 It is hardly reasonable to assume that 18 O.S.1991 § 437.2(k), a statute that is clearly unconstitutional under the majority's interpretation of Art. 10 § 5(a) of the constitution, may be used as a device to allow OEC to secure a monopoly over the objection of Newcastle's city council. But that is exactly what OEC is saying and what the majority has approved.
¶ 6 Despite the majority's ruling today OG&E would, apparently be entitled to an order from the Oklahoma Corporation Commission authorizing OG&E to extend its service under other opinions of this Court. OEC concedes that OG&E is authorized to do business in the part of Newcastle that was simultaneously annexed by Newcastle and de-annexed by Oklahoma City. As a regulated public utility, OG&E is subject to the Corporation Commission's power to, "within constitutional and reasonable limitations compel [it] to extend its service within the boundaries of those cities it is now serving." Oklahoma Natural Gas Co. v. Corporation Commission, 1929 OK ___, 88 Okla. 51, 211 P. 401, 402. Thus, because OG&E is now serving Newcastle, the Oklahoma Corporation Commission evidently has the power to enter an order requiring OG&E to extend its service to additional customers within Newcastle's city limits.
¶ 7 The majority quotes extensively from McPhee & McGinnity Co. v. Union Pac. R. Co., 158 F. 5 (8th Cir.1907), for the proposition that the right granted by Newcastle to OG&E could not be granted by license. Not only does the McPhee opinion not support this proposition it expressly rejects it. In McPhee the City of Denver by ordinance granted a "license and permit" to the Union Pacific Railroad to extend its already existing lines in Denver by building a spur track from its main line to serve a shipper's warehouse. Plaintiffs sought to enjoin the city and the railroad because the railroad had not obtained a voter-approved franchise, mandated under a constitutional provision similar to Art. 18 § 5(a). The court rejected plaintiff's argument and held that the railroad was not required to obtain a voter-approved franchise to allow the railroad to extend its lines beyond its existing lines, which the railroad was undisputedly authorized to operate. Because the railroad was already operating within the City of Denver and sought only to build a spur track the court concluded that the privilege to extend the spur track that the city *520 granted to the railroad was "a license rather than a franchise." McPhee at 158 F. 11.
¶ 8 Similarly, the majority's reliance on Oklahoma Gas & Electric Co. v. Total Energy, 1972 OK 108 ¶ 21, 499 P.2d 917, is misplaced. There are three significant factual differences between Total Energy and this case: First, Total Energy was not a regulated light and power company; Second, Total Energy was not doing business in The Village prior to its dispute with OG&E; and Third, there is no indication in the Total Energy opinion that Total Energy sought or The Village granted any sort of permission for Total Energy to engage in a light and power business. Thus, it is clear that Total Energy does not support the proposition that OG&E, a regulated public utility, licensed to do business and doing business in Newcastle, is required to obtain a franchise before it can extend its lines.
¶ 9 The policy requiring franchises to be granted by election and discouraging monopolistic franchises is secured under the Oklahoma Constitution, Art. 18 § 5(a) (requiring franchises to be approved by a vote of the people) and Art. 18 § 7 (reserving the right of the state to regulate utilities and prohibiting the granting of exclusive franchises).[2] But to apply Art. 18 § 5(a) here as the majority has done reduces competition because Newcastle is now prohibited from allowing OG&E to compete with OEC for light and power business in Newcastle. This result is contrary to the clear public policy of the state as expressed in both Art. 18 § 5(a) and § 7 of the constitution.
¶ 10 The majority's citation of the Supreme Court of Colorado's opinion in Community Tele-Communications, Inc. v. Heather Corp., 677 P.2d 330 (Colo.1984) is puzzling. There the Colorado court held that a municipality had improperly granted a franchise to a cable television concern without a vote of the people. The grant of authority given by the municipality, however, carried with it a right to operate for ten years at a time when the cable company was neither authorized to do business nor was it doing business within the municipality. Thus, the ruling of the Colorado court prevented a municipality from granting a monopoly to a new entrant into the market place without a vote of the people. In stark contrast, the majority opinion perpetuates a monopoly.
¶ 11 City of Englewood v. Mountain States Telephone and Telegraph Company, 163 Colo. 400, 431 P.2d 40, 42 (1967), involved facts very similar to those present here. There the Supreme Court of Colorado En Banc cited the Eighth circuit's McPhee case, cited above, with approval. The utility had been franchised but the franchise had expired. The utility insisted that it did not have to renew its franchise to continue doing business in Englewood because it was a licensed public utility already lawfully doing business there. The court agreed. Here the correct result is even more obvious because Newcastle does not insist that OG&E obtain a franchise but agrees that OG&E should be allowed, under its license, to expand its service without a franchise. The Colorado court also pointed out that when determining whether a franchise is required one must distinguish between a statewide public utility (there a telephone company) and "a city gas or electric company operation whose predominant epicenter usually is limited to a local focus." Here, of course, OG&E is a regulated public utility with operations throughout the state and its epicenter is certainly not Newcastle, Oklahoma.
¶ 12 The majority relies upon OG & E v. Wilson & Co., 1930 OK ___, 146 Okla. 272, 288 P. 316, 317, for the proposition that a franchise "is a privilege of doing that which does not belong to the citizens of the country by common right." While I have no disagreement with that statement of the law, it does not support the majority's conclusion that Newcastle is prohibited under the constitution from licensing OG&E to extend its service. Here, OG&E is a licensed, regulated, *521 public utility doing business in Newcastle as is OEC. As a result, OG&E already possesses the privilege of conducting a light and power business in Newcastle, although that right is not granted "to the citizens of the country by common right." Thus, the majority's holding that OG&E required a voter-approved franchise from Newcastle to extend lines it is already authorized by law to operate is not supported by Wilson.
¶ 13 The foregoing authorities lead irresistibly to the conclusion that Newcastle properly acted within its powers as a municipal corporation in granting utility permits to OG&E to extend its lines within the municipality without the necessity of obtaining a voter-approved franchise. The majority's conclusion that Newcastle lacked the power to authorize OG&E to extend its lines impedes rather than promotes competition by leaving OEC with a monopoly within the Newcastle city limits. This result is contrary to the constitutional plan the framers envisioned to prevent giving monopoly power to public service companies.
¶ 14 OEC has made no claim, and the majority does not indicate, that Newcastle's decision to allow OG&E to serve four additional homes in the municipality was detrimental to Newcastle's citizens. In fact, Newcastle's actions promoted, not stifled, competition. The majority's application of Art. 18 § 5(a) is clearly contrary to the intention of the constitution's framers to promote competition.
¶ 15 Until today, I had never seen, despite diligent research, any case from any jurisdiction holding that a municipality's legislative body could not license a public utility company, which was regulated by the state and which was lawfully doing business within the municipality, to extend its service. One looks in vain for a rational basis for such a holding.
I dissent.
NOTES
[1] OEC does not challenge the right of OG&E to retain its installations and provide service to the twelve customers in place before the annexation. We address only OG&E authority to expand its service absent a voter-approved franchise.
[2] Section 22-107 of title 11 of the Oklahoma Statutes, titled "Licenses Regulated by Ordinance  Expiration  Issuance", provides:

Municipal licenses and license fees shall be regulated by ordinance. A municipality may establish such license requirements as it deems appropriate in the exercise of its police power and may provide that each applicant supply his state sales tax identification number or proof of exemption pursuant to the provisions of Title 68 of the Oklahoma Statutes. Any license issued by the governing body shall expire no later than one (1) year after the date of its issuance or on June 30 of each year. . . .
If the City Council, under its statutory authority granted OG&E a license, it has expired by virtue of the provisions of section 22-107 of title 11.
[3] Section 36-101 of title 11 of the Oklahoma Statutes provides:

A municipal governing body may, in a manner provided by law:
1. Regulate and control the use of streets, roads and other public ways within the limits of the municipality. . . .
[4] Section 1401(b) of title 69 of the Oklahoma Statutes provides:

The use of the public roads and highways by such public utilities or cable television system shall be for the purpose of erecting poles and posts, attaching equipment, wires and fixtures thereto and laying pipes and conduits under the surface thereof. Such poles, wires, fixtures, pipes and conduits shall be erected, placed, adjusted or laid and maintained only after obtaining the consent of, and under such rules and regulations as shall be prescribed by, the Commission as to the state highway system, and the boards of county commissioners of the various counties as to the roads and highways under their jurisdiction. Provided, that nothing herein shall be construed to grant the right to use the streets or other places of any municipality of this state without the consent of such municipality. . . .
[5] Article 18, section 7 of the Oklahoma Constitution states:

No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the State, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment.
Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted.
(Emphasis added.)
[6] Two purposes of the Electric Restructuring Act of 1997, Okla. Stat. tit. 17, §§ 189-190.7 (Supp. 1997), are:

2. Competition. Competitive markets are to be encouraged to the greatest extent possible. Regulation should serve as a substitute only in those circumstances where competition cannot provide results that serve the best interests of all consumers;
3. Consumer choice. Consumers shall be allowed to choose among retail electric energy suppliers to help ensure fully competitive and innovative markets. A process should be established whereby all retail consumers are permitted to choose their retail electric energy suppliers by July 1, 2002.
Id. at § 190.4.
[1] Title 18 O.S.1991 § 437.2(k) provides in material part:

. . . In case an area has been or shall be included, as a result of incorporation, annexation, population growth, or otherwise, within the boundaries of a city, town or village, a cooperative which was furnishing electric energy, or was constructing or operating electric facilities, in such area, prior to such inclusion, shall be entitled to construct, maintain and operate electric transmission and distribution lines and related facilities along, upon, under and across all existing and future public thoroughfares, and to continue and extend the furnishing of electric energy or the construction and operation of electric facilities in such area without obtaining the consent, franchise, license, permit or other authority of such city, town or village. . . .
[2] Art. 18 § 7, Oklahoma Constitution provides:

No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the State, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment.
Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted.