Dear Senator Sparks:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. May a municipality, or a Title 60 public trust whose sole beneficiary is a municipality, [1] engage in a program whereby a voluntary fee may be collected by the municipality in exchange for the potential future payment of funds to the fee payor to reimburse the fee payor for expenses and losses incurred as a result of a sanitary sewer backup into said payor's real property?
 2. If a municipality, or a Title 60 public trust whose sole beneficiary is a municipality, engages in such a program would the muncipality be engaging in the provision of insurance? If so, would the municipality be subject to the jurisdiction and regulation of the Oklahoma Insurance Commission or any other federal or state regulation?
 3. As part of the above-described program, could the municipality require, as a condition of acceptance of reimbursement under the program, the fee payor to waive or sign a release of its rights to recovery of said expenses or losses under Oklahoma common *Page 2 law, constitutional law and statutory law, including, but not limited to the Governmental Tort Claims Act? If so, would the release be effective and enforceable?
Before analyzing your questions, an understanding of the potential liability of a municipality for damages to private property resulting from a sanitary sewer system backup is important. The Oklahoma Supreme Court has long established that a municipality can be held liable for damages resulting from sewer backups.
 The general rule is that where a municipal corporation assumes the control and management of its sewer system, which has been constructed by it and under its supervision, it is bound to use reasonable diligence and care to see that such sewer is not clogged with refuse and is liable for negligence in the performance of such duty to a property owner injured thereby after reasonable notice of the clogged condition of its sewer.
City of Holdenville v. Moore, 293 P.2d 363, 366 (Okla. 1956). This liability, however, is limited. As noted in Moore, a municipality must receive "reasonable notice of the clogged condition" before it can be found liable for negligence. Id.
In addition, the Oklahoma Governmental Tort Claims Act ("GTCA") adopts the doctrine of sovereign immunity for the State, its political subdivisions and its employees acting within the scope of their employment. 51 O.S. 2001, § 152.1[51-152.1](A). The definition of a "political subdivision" under the GTCA includes both "a municipality" and "a public trust where the sole beneficiary or beneficiaries are a city, town, school district or county." 51 O.S.Supp. 2008, § 152[51-152](10)(a), (d). This sovereign immunity is waived "only to the extent and in the manner provided in this act." 51 O.S. 2001, § 152.1[51-152.1](B). Under the GTCA:
 A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.
 B. The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise.
Id. § 153. Thus, the sovereign immunity of a municipality is waived only to the extent allowed in the GTCA and its liability is limited to that allowed under that Act.
The first issue to examine is whether a municipality may indemnify private property owners who pay a voluntary fee to the city for property damage outside of statutory remedies. A *Page 3 
municipality has several constitutional and statutory powers. The Oklahoma Constitution allows a municipality "the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation." OKLA. CONST. art. XVIII, § 6.[2] The Oklahoma Constitution, however, does not provide a municipality the right to engage in any type of business but only those businesses which may be "engaged in . . . by virtue of afranchise" from the municipality. Id. (emphasis added). In OklahomaElectric Cooperative v. Oklahoma Gas and Electric Co., 982 P.2d 512
(Okla. 1999), the Oklahoma Supreme Court pointed out that the definition of "franchise," while not defined in the Oklahoma Constitution, has been adopted by the court as follows:
 The word "franchise" is generally used to designate a right or privilege conferred by law. To be a "franchise" the right possessed must be such as cannot be exercised without the express permission of the sovereign power. It is the privilege of doing that which does not belong to the citizens of the country generally by common right.
 . . . .
 [T]he term franchise . . . means the right granted by the state or a municipality to an existing corporation or individual to do certain things which a corporation or individual otherwise cannot do, such as the right to use the street . . . to erect thereon poles and wires . . . for electric light purposes.
Id. at 514-15 (quoting Okla. Gas Elec. Co. v. Total Energy,499 P.2d 917, 921 (Okla. 1972)). Thus, under this article of the Oklahoma Constitution, a municipality may only engage in businesses that involve the traditional activities of a municipality, those activities which are generally not available to corporations and private citizens.
In addition, the Legislature has provided municipalities the power to: *Page 4 
 4. Make all contracts and do all other acts in relation to the property and affairs of the municipality, necessary to the good government of the municipality, and to the exercise of its corporate and administrative powers; and
 5. Exercise such other powers as are or may be conferred by law.
11 O.S. 2001, § 22-101[11-22-101]. "A municipal corporation possesses and can exercise only those powers granted in express words, those necessarily or fairly implied or incidental to the powers expressly granted, and those essential to the declared objects and purposes of the corporation." Dev. Indus., Inc. v. City of Norman, 412 P.2d 953, 956
(Okla. 1966). Therefore, a municipality can indemnify private property owners, whether through a third-party insurer or through its own program, only if the power to do so has been expressly granted to it or can be fairly implied. Accordingly, if a municipality does not have the power to provide insurance to private property owners through a third-party insurer, it does not have the power to become an insurer for private-property owners on its own.
A review of statutes finds that a municipality has the power to self-insure against liabilities. 51 O.S.Supp. 2008, § 167[51-167](B)(1). In addition, a political subdivision may be liable, even if otherwise exempt under the GTCA, "on an insured risk to the extent of coverage under liability insurance." Herweg v. Bd. of Educ., 673 P.2d 154, 156
(Okla. 1983). The question of a municipality insuring itself, however, is not the same as whether a municipality may provide insurance to private parties.
Under the Insurance Code, "`[i]nsurance' is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." 36 O.S. 2001, § 102[36-102]. An "insurer" is "every person[3] engaged in the business of making contracts of insurance or indemnity." Id. § 103(A) (footnote added). Specifically, "`property insurance' is insurance on real or personal property of every kind and interest therein, against loss or damage from any or all hazard or cause, and against loss consequential upon such loss or damage." Id.
§ 704. Thus, in the scenario presented in your questions, the municipality would be the "one who undertakes to indemnify," the property owner would the party indemnified, and the "loss or damage" indemnified against would be damages caused by a sewer backup. This type of arrangement would make the municipality an insurer under the Insurance Code, with the municipality providing property insurance against the losses of a private property owner related to sanitary sewer backups. Therefore, the program you ask *Page 5 
about is not insurance benefitting the municipality, but insurance benefitting a private-property owner.
We found no constitutional or statutory authority that would allow a municipality to become an insurer for private parties against property damage resulting from a sanitary-sewer backup.[4] In addition, the liability of a municipality to private property owners is limited to what is available under the GTCA.[5] Therefore, a municipality has no authority to be an insurer of private property for the benefit of a private property owner. Because a municipality cannot enter into this type of arrangement, we need not answer your remaining questions.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. A municipality, or a Title 60 public trust with a municipality as its sole beneficiary, has no authority to establish a program where private property owners may voluntarily make payments to the municipality in exchange for the potential future reimbursement for expenses and losses incurred as a result of a sanitary sewer backup, as it has no express or implied power to become an insurer for private property owners. OKLA. CONST. art. XVIII, § 6; Dev. Indus., Inc. v. City of Norman, 412 P.2d 953, 956 (Okla. 1966).
 2. An arrangement where a municipality, or a Title 60 public trust whose sole beneficiary is a municipality, collects a voluntary fee from private property owners in exchange for the potential future payment of funds to the private property owner for expenses and losses incurred as a result of a sanitary sewer backup would make the municipality or public trust an insurer under the Insurance Code. 36 O.S. 2001, §§ 102[36-102], 103. *Page 6 
 3. A municipality, or a Title 60 public trust with a municipality as its sole beneficiary, has no authority to pay private property owners the costs of additional damages to property as a result of a sanitary sewer backup outside of what is statutorily available under the Governmental Tort Claims Act. 51 O.S. 2001, § 152.1[51-152.1].
W. A. DREW EDMONDSON Attorney General of Oklahoma
PATRICIA A. PODOLEC Assistant Attorney General
[1] You have asked about the effect on both a municipality and a public trust formed under Title 60. A municipality is defined as "any incorporated city or town." 11 O.S. 2001, § 1-102[11-1-102](5). Under Title 60, a public trust may be created by a municipality "to provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of the state or of any county or municipality or any and all combinations thereof." 60 O.S.Supp. 2008, § 176[60-176](A). A municipality and a Title 60 public trust whose sole beneficiary is a municipality are separate and distinct legal entities. Id. § 176.1(A)(2). For the purposes of this Opinion, however, the analysis is the same for both types of entities. Thus, references to a "municipality" also include a "Title 60 public trust whose sole beneficiary is a municipality."
[2] Section 22-104 of Title 11 contains similar language:
Every municipality shall have the right to:
 1. Engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from the municipality and to do all things necessary and proper in the discretion of the governing body of the municipality pursuant to the authority granted to it by the Constitution and laws of this state to maintain said business or enterprise for the benefit of the municipality[.]
Id. (emphasis added).
[3] A "person" is defined to include "an individual, company, insurer, association, organization, society, reciprocal or inter-insurance exchange, partnership, syndicate, business trust, [or] corporation. . . ." 36 O.S.Supp. 2008, § 104[36-104].
[4] Previous Attorney General Opinions have also addressed the issue of indemnification of private third parties by the state. Attorney General Opinion 07-41 concluded that "[g]enerally, the State or a state agency cannot lawfully agree to indemnify a private contractor." A. G. Opin. 07-41, at 261. See also A. G. Opin. 06-11, at 77 (providing a review of previous Attorney General Opinions concerning indemnification of a non-state party).
[5] Nothing in the GTCA, however, prevents a municipality from settling a liability claim arising from a sewer backup and requiring a release from the property owner. See 51 O.S.Supp. 2008, § 158[51-158](A) ("The state or a political subdivision, after conferring with authorized legal counsel, may settle or defend against a claim or suit brought against it or its employee under this act subject to any procedural requirements imposed by statute, ordinance, resolution or written policy, and may appropriate money for the payment of amounts agreed upon."). Id. (footnote omitted). *Page 1